MYERS *v.* PHILLIPS.

No. 14819.   April 6, 1944.

*Woodruff, Ward & Etheridge* and *Brandon, Matthews, Long & Nall,* for plaintiff in error.

*W. E. Harclerode* and *H. A. Allen,* contra.

GRICE, Justice. ■ ■ ■ The rule in this State is that a party to a suit is not rendered incompetent to give testimony therein unless such party falls within some exception in the Code, § 38-1603. It is claimed by the defendant in error that the proffered testimony of Mrs. Myers, the plaintiff in error, was properly excluded under subsection 1 of the cited section, which reads as follows: "Where any suit shall be instituted or defended by a person insane at the time of trial, or by an indorsee, assignee, or transferee, or the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or

deceased person as to transactions or communications with such insane or deceased person whether such transactions or communications were had by such insane or deceased person with the party testifying or with any other person." The insistence is that Mrs. Phillips, the plaintiff in the trial court, who was the widow of Park and his sole heir at law, all of his debts being paid, is his personal representative, so as to make this a suit instituted by the personal representative of a deceased person. Code, § 113-903; *Johnson* v. *Champion,* 88 *Ga.* 527 (15 S. E. 15); *Killian* v. *Banks,* 103 *Ga.* 245 (29 S. E. 971); *Willis* v. *Bonner,* 136 *Ga.* 720 (71 S. E. 1048). On the other hand, it is contended that Mrs. Phillips can not be treated as the personal representative of her deceased husband since her petition shows that another person was appointed administrator of his estate, and was discharged without attempting to administer the land here involved, and therefore that this suit must be treated as one filed by Mrs. Phillips in her individual capacity as an heir at law. As to this, see the list of authorities collected in *Helton* v. *Shellnut,* 186 *Ga.* 185 (3) (197 S. E. 287). We can, however, by-pass these positions, since no matter how the issue thus raised be determined, the witness was not incompetent to give the testimony sought, even though she be the opposite party in a suit instituted by the personal representative of a deceased party. She was not seeking to give testimony in her own favor as to transactions or communications with the deceased person. She was handed the deed, dated March 11, 1939, and asked when was the first time she ever saw it; and she answered, "on March 12, 1939." The next question was, "I wish to ask you, who had it when you saw it?" The answer was, "Mrs. Riedell, grantee." In *Chamblee* v. *Pirkle,* 101 *Ga.* 790 (29 S. E. 20), it was said: "A transaction or communication with a deceased person, as used in the section cited, means, we think, some transaction or communication had directly with the deceased, something personal between the surviving and the deceased parties, a transaction or communication of such character that the deceased, if alive, could deny, rebut, or explain the statement of the other party." See also the following cases and the authorities referred to therein: *Cato* v. *Hunt,* 112 *Ga.* 139 (37 S. E. 183); *Nugent* v. *Watkins,* 129 *Ga.* 382 (58 S. E. 888); *Arnold* v. *Freeman,* 181 *Ga.* 654 (183 S. E. 811); *Bleckley* v. *Bleckley,* 189 *Ga.* 47, 57 (5 S. E. 2d, 206). The rejected testimony should have been admitted.

The other special grounds of the motion, relating to the charge, have been examined. None of them show any reason for a reversal.

■ Complainant's right to recover depends upon whether or not it was shown that the deed in question was never in fact delivered. The effect of the jury's verdict was to find that there was no delivery. It was recorded subsequently to the death of the grantor, and after it was found in what is referred to in the evidence as his strongbox or safe in a room in an apartment occupied by him and not by the grantee. In this box were insurance policies on the identical property, made out in the name of Park, and private papers and jewelry belonging to him and his wife. There was evidence that Park collected rents on this property after the date of the deed, giving rent receipts in his own name. There was testimony that the box or safe had a combination lock to it, and that no one except Park knew the combination. A locksmith was sent for, and in the afternoon after the burial of Park the box was opened and the deed was found therein by one who had formerly been an attorney for Park. This lawyer read it and handed it to the grantee. Both he and the grantee were dead when the suit was tried. The instrument contained a recital that it was "signed, sealed and delivered in the presence of" two witnesses, one of whom was a justice of the peace. The formal execution of the deed and the language of the attestation clause raised a prima facie presumption that the deed was delivered. *Dinkins* v. *Moore,* 17 *Ga.* 62; *Highfield* v. *Phelps,* 53 *Ga.* 59; *Ross* v. *Campbell,* 73 *Ga.* 309; *Mays* v. *Fletcher,* 137 *Ga.* 27, 28 (72 S. E. 408); *Slinson* v. *Daniel,* 193 *Ga.* 844, 849 (20 S. E. 2d, 257). Moreover, on that question, there was direct and positive evidence from a witness, J. B. Smith, who was unimpeached, that the grantor manually delivered the deed to the grantee therein and that she accepted it. The material portion of this testimony on the direct examination is set forth in the preceding statement of facts. On cross-examination he stated that he did not have with him the little book on which he recorded the incidents happening to his automobile because the same was stolen, together with some other things, from his car at some time before the trial. On redirect examination he testified: "I had occasion to examine the little book and refresh my memory from the contents of the little book after this suit was filed, at the request of Mrs. Myers; and it is from that refreshment of my recollection

542

after this suit was filed that I have been testifying in this case today." Mrs. Orr, the mother of the complainant, testified as shown in the statement of facts. Comparing the testimony of Smith with that of Mrs. Orr, it will be seen that the former swore that he first saw Park at about four o'clock, and the latter that she talked over the telephone with Park ("who told me he was in Griffin. That is the only way I know, of course") at two o'clock that afternoon.

The fourth headnote is taken verbatim from the opinion of this court in the case of *Lankford* v. *Holton,* 187 *Ga.* 102 (supra). It states a well known principle of law. Circumstantial evidence from which the existence of a fact might be inferred, but which did not demand a finding for the plaintiff to that effect, will not support a verdict, when by positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed. *Frazier* v. *Georgia Railroad & Banking Co.,* 108 *Ga.* 807 (33 S. E. 996) ; *Taggart* v. *Savannah Gas Co.,* 179 *Ga.* 181 (175 S. E. 491). There is nothing in the record to impeach the witness who testified positively that Park delivered the deed to the grantee, his mother, that she accepted it, and handed it back to him with the request that he lock it in the tin box for safe keeping, giving a reason therefor. The circumstances relied on by the defendant are insufficient to make a jury question as to whether or not the witness Smith swore the truth. The verdict is unsupported by the evidence. It was error to refuse a new trial.

*Judgment reversed. All the Justices concur.*