38355.   GOLDSTEIN, Administratrix v. DREXLER.

DECIDED JUNE 22, 1960—REHEARING DENIED JULY 12, 1960.

*Nall, Miller, Cadenhead & Dennis, B. Carl Buice,* for plaintiff in error.

*J. Walter LeCraw,* contra.

Townsend, Judge. ■ *Code* § 14-301 provides: "Every ne-

gotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value." The first special ground of the motion for a new trial raises the question of whether the presumption of consideration continues in the presence of adverse testimony so that, even without additional testimony for the plaintiff, a jury question remains in the case. *Code* § 38-113 states: "Presumptions are either of law or of fact. The former are conclusions and inferences which the law draws from given facts. The latter are exclusively questions for the jury, to be decided by the ordinary test of human experience." *Code* § 38-118 provides: "Other presumptions of law, such as of innocence, and in some cases of guilt, of continuance of life for seven years, of a mental state once proved to exist, and all similar presumptions, may be rebutted by proof." "But bare presumptions of law give way to testimony, which may shift the burden of proof or of proceeding to the opposite party, and he is then not entitled to prevail upon the presumption alone." *Hamby v. Crisp*, 48 Ga. App. 418, 421 (172 S. E. 842). See also *National Life &c. Ins. Co. v. Hankerson*, 49 Ga. App. 350 (7) (175 S. E. 590); *Gibson v. Gibson*, 54 Ga. App. 187 (1) (187 S. E. 155). Accordingly, where all of the evidence in the case affirmatively establishes a want or failure of consideration, the plaintiff would not be entitled to recover solely on the prima facie presumption of consideration arising from the fact that the instrument in question is negotiable and recites "for value received." In such a case it would not be error to direct a verdict.

■ "Not only may an issue of fact arise from contradictory evidence, but implications inconsistent with the testimony may arise from the proved facts, and in still other ways the question of what is the truth may remain an issue of fact despite uncontradicted evidence in regard thereto. *Cooper v. Lumbermen's Mut. Cas. Co.*, 179 Ga. 256, 261 (175 S. E. 577); *Employers Liability Assurance Corp. v. Woodward*, 53 Ga. App. 778, 779 (3) (187 S. E. 142)." *Smith v. U. S. Fidelity &c. Co.*, 94 Ga. App. 507 (3) (95 S. E. 2d 35). "Frequently amongst the facts best proved is one which no witness has mentioned in his

testimony, such fact being an inference from other facts." *Brown v. Matthews,* 79 Ga. 1 (4 S. E. 13). The direct, positive, uncontradicted testimony of an unimpeached witness cannot be arbitrarily disregarded. *Myers v. Phillips,* 197 Ga. 536 (4) (29 S. E. 2d 700). Had the testimony been only as set out in the statement of facts, supra, without the question of impeachment entering into the case, there could be no doubt but that the judgment of the trial court directing a verdict in favor of the defendant would be correct. It is true that he saw the witnesses and was able to form his own opinion of the truth or falsity of their testimony; nevertheless, the ultimate question of whether a witness has been successfully impeached is solely for the jury, and, if he has been so impeached, the jury may disbelieve his entire testimony. *Swift & Co. v. Lawson,* 95 Ga. App. 35 (97 S. E. 2d 168). "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." *Code* § 38-1806.

The defendant in this case could not prevail unless the jury was willing to believe the testimony of either his brother or his sister, or both. As to the brother, it appears that he first, as executor of the estate, filed suit on the notes; he signed a jurat form stating that the allegations of the petition were true and the account sued on is just, due, and unpaid (although this form was never attested); he received two letters from his attorneys, one just before and one just after the suit was filed, one of which set out that Goldstein had stated his "impression that they [the notes] represent merchandise purchases . . . and that this would be the nature of your testimony upon the trial of the issues," and the other advising Goldstein as executor that he was required to make a decision as to the collectibility of the assets; that a lawsuit cannot be filed on an equivocal basis; that the widow, Rosalee Goldstein "did not want the estate to incur any further attorney's fees in the filing of the suit against Cecil. I do not see any necessity for this being done either," and advising him, since he was to terminate the executorship by

resignation, to leave the decision to his successor. These letters were never answered by the witness. *Code* § 38-120 provides: "In the ordinary course of business, when good faith requires an answer, it is the duty of the party receiving a letter from the other to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts mentioned in the letter of his correspondent, and to adopt them." It thus appears that the jury might have found that this witness, after informing his attorneys that the notes represented merchandise purchases, and after insisting upon filing suit in the face of their resistance, then abandoned his position as plaintiff and testified for the defendant that the notes did not represent merchandise purchases but were a fraudulent scheme concocted illegally to prefer assets in the event of future financial difficulty. Under these circumstances they would be authorized to reject his entire testimony.

The only other witness, Natalie Cooper, contradicted herself also in certain particulars. She testified in conflict with her testimony on previous depositions as to the deceased's habit of keeping large amounts of cash around his office (this being material because she based her conclusion as to the lack of consideration for the notes partly on the fact that there were no sums of money which could have been turned over to the defendant without her knowledge). Whether she successfully explained the contradiction in her testimony was for the jury to decide; if they found she swore wilfully falsely on either occasion, they would have to disregard her testimony in its entirety, the depositions being in the same case. Again, she swore positively: "During the latter part of 1946, Cecil Drexler never received any money from Bill Goldstein," following which the plaintiff introduced in evidence six canceled checks dated from August through October, 1946, signed "Crescent Neckwear Company by W. H. Goldstein" and naming the defendant as payee. The checks totaled less than 10% of the face value of the notes; nevertheless, in view of the witness' positive testimony as to her knowledge of all the financial transactions of her deceased brother's company in which she worked as bookkeeper, and the fact that her testimony that there was no consideration

for the notes was based on this knowledge, the contradiction was such as to demand that the jury and not the court pass on the weight to be given it. Further, the relationship of the witnesses to the parties may be taken into consideration by the jury in estimating the credit to be given to them. *Simpson v. State,* 78 Ga. 91.

It appears from the opinion of the trial court that he directed the verdict primarily on the proposition that, since the evidence showed a contract for an illegal purpose, the law would leave the parties where it found them. If the jury should believe the witnesses for the defendant, then this conclusion would be demanded. If, however, it found all of them totally unworthy of credit, the case would be as though the defendant had introduced no evidence, and the plaintiff would still have the prima facie presumption arising from the introduction of the notes in evidence to aid her case. The credit to be given these witnesses being a jury question, the trial court erred in denying the motion for new trial complaining of the direction of a verdict for the defendant.

*Judgment reversed. Gardner, P. J., Carlisle and Frankum, JJ., concur.*