44041. CARPET SHOP, INC. v. POWELL.

WHITMAN, Judge. This case involves a suit for damages for personal injuries. Powell's complaint alleges that his injuries were caused by the defendant's negligence; that he "was injured on the north concrete ramp walkway of [defendant's] . . . building when he slipped on a substance which appeared after he fell, to be either plywood, linoleum covered plywood, or some other similar substance which was dull in color and blended in with the concrete and, although slippery from age and exposure, did not give the patent appearance of being such." Plaintiff also alleges that at the time he was injured he was on the defendant's premises as an invitee and that he was "not guilty of any contributory negligence." The defendant answered denying the material allegations of the complaint.

At the trial, the plaintiff testified that he went to defendant's store to purchase a piece of rubber matting; that he asked and was given permission to leave the store at the door near which he was standing when he consummated his business; that he walked out of the door onto a platform, part of a loading area, and turned to his right and started walking down the ramp; that he noticed nothing unusual when he started down the ramp, "it looked like a safe walkway. . . . I didn't stop and examine the walkway . . . but it looked safe"; that "I walked down I would think to about the middle of the walkway or the ramp, I'd say around eight feet maybe, that's a guess of course, and just all at once it just felt as if the ramp had come aloose"; and that he fell backwards. The plaintiff further testified that Mr. Whitfield, the employee from whom he had purchased his rubber matting, walked down and picked up what looked like a piece of plyboard with a piece of linoleum on it and set it up on the side of the building; that, from his observation, the underside of the plyboard had some wet spots around it and some dry spots and it looked "slick and slimey and had some mold"; that the concrete under the board had about the same appearance as the plyboard, "it had some trash and there was more on the concrete than there was on the plyboard, the plyboard was more slick, slimey looking and the concrete had enough trash on it as I told you that Mr. Whitfield, after he picked it up, took his foot and started cleaning the ramp off with his foot."

The plaintiff further testified that from his own experience in cleaning up trash and refuse around his barber shop and from the appearance under the plywood, it was his opinion that the plyboard had been lying there two weeks or more.

On cross-examination, the plaintiff was asked what there was to prevent him from seeing the linoleum or whatever it was on the ramp, it being daylight about nine o'clock in the morning. Plaintiff answered that: "There was nothing about it obvious to make me notice it. I didn't—when I was told I could go out this door, the side entrance and down that ramp, when I'd walk out, I did not stop and inspect this ramp— under normal conditions. I kept walking."

Mr. Farr, president of Carpet Shop, Inc., testified that the garbage and trash was cleaned up and removed six days per week by the business itself. He further testified that he

didn't stay at the store all the time, but he did see the ramp quite often; that he did not know there was a board on the ramp; that someone could have placed it there but he did not know how it got there; that they did not carry linoleum or do any placing of linoleum onto boards. Mr. Farr also testified that no one that he knew of gave the plaintiff instructions to go out the door to the ramp.

Mr. Whitfield, the employee who had waited on the plaintiff, testified that the platform and ramp were clear as far as he knew; that the plywood with the linoleum on it was not, to his knowledge, on the ramp when the store was closed on Saturday; that it was leaning up against the building some distance from the ramp; that there are quite a few children in the neighborhood and they go through there all the time; that they were difficult to keep away and it was possible that they had in some manner moved it and had dropped it across the platform and left it. Whitfield also testified that, to his knowledge, he did not order or direct the plaintiff to use the ramp entrance but the plaintiff may have asked him if he could use it and he may have said "yes," thinking the platform and ramp were clear, but he could not remember.

Whitfield further testified that when he lifted the board, there were a few leaves under it, the board was a little bit slippery because it was wet; that it had been drizzling; and that there was no mold on the ramp but there was some mold on the board.

The jury returned a verdict for the plaintiff. The defendant made motions for a judgment notwithstanding the verdict and for a new trial. An order was entered overruling both motions, as amended. This order is appealed from and enumerated as error with respect to both motions. *Held:*

1. The law applicable to a case such as this is summarized in *Shannon v. Bigelow-Sanford &c. Co.*, 96 Ga. App. 458, 461 (100 SE2d 478), as follows: "Where the owner or occupier of land by express or implied invitation induces or leads others to come on his premises for any lawful purpose, he is liable in damages to such person for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe. . . The owner of land owes a duty [of ordinary care] to an invitee to protect him against injury, and he must keep the premises free from pitfalls and mantraps . . . and the owner of premises is liable for in-

juries resulting from dangerous conditions existing on the premises . . . or from injuries received as a result of defective construction. . . Constructive knowledge of any defect causing an injury is sufficient to charge the defendant with liability therefor. . . A slight deviation by the plaintiff from the exact route that he would ordinarily take in entering on or leaving the defendant's premises does not render the invitee a trespasser nor relieve the defendant from its duty to protect him from hidden danger . . . and the duty of the plaintiff to exercise ordinary care to avoid the consequences of the defendant's negligence does not arise until he becomes aware of such negligence or in the exercise of ordinary care should have become aware of it." (Citations omitted.)

2. Besides the general grounds, the motion for new trial contains two special grounds. One is that plaintiff failed to show any negligence on the part of defendant and in this connection it is strenuously contended that there was absolutely no evidence showing any actual knowledge on the part of the defendant of the plyboard's existence on the ramp, and, further, there was no evidence showing the length of time the plyboard had been on the ramp so as to charge the defendant with *constructive* knowledge thereof. The second special ground is that the evidence shows that the plaintiff, in the exercise of ordinary care, could have avoided injury.

Questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for jury determination. *Peck v. Baker*, 76 Ga. App. 588, 595 (46 SE2d 751). Thus, the question presented by the two special grounds is the same as that presented by the general grounds, namely, whether there is any competent evidence to support the jury's determination.

The plaintiff's opinion testimony that the plyboard had been lying there for two weeks or more was properly before the jury for their consideration. The plaintiff gave the facts upon which he based this opinion. "In every instance where the subject under investigation is a proper one to be illustrated by the opinion of experts, unskilled persons may give their opinions, provided they accompany them with the facts from which the opinions are deduced." *Central Railroad v. Coggin*, 73 Ga. 689, 696; *Central Railroad v. Senn*, 73 Ga. 705, 711. See also *Code Ann.* § 38-1708; Green, Geor-

gia Law of Evidence 263, § 110 (1957). The weight to be given this evidence was for the jury. It is sufficient to uphold the verdict.

3. Likewise, on the question raised regarding whether plaintiff exercised ordinary care for his own safety, the jury was authorized to believe the plaintiff's testimony that "there was nothing about it obvious to make me notice it."

4. There was no error in overruling the defendant's motions for judgment notwithstanding the verdict and new trial.

*Judgment affirmed. Jordan, P. J., Bell, P. J., Hall, Pannell, Deen and Quillian, JJ., concur. Felton, C. J., and Eberhardt, J., dissent.*

ARGUED NOVEMBER 7, 1968—DECIDED MARCH 14, 1969—
REHEARING DENIED APRIL 4, 1969—

*Hull, Towill & Norman, James M. Hull, Jr., Patrick J. Rice,* for appellant.

*Lanier, Powell, Cooper & Cooper, Jack L. Cooper,* for appellee.

FELTON, Chief Judge, dissenting. I think that the court erred in overruling appellant's motions for a judgment n.o.v. and for a new trial.

The object on which the appellee slipped appears from the pictures in evidence to be a board about three feet long and six inches wide. That fact becomes material in the testimony of Mr. Whitfield, a witness for appellant, bearing on the question as to how long the board had been on the ramp at the time appellee slipped on it. Mr. Whitfield testified in part: "The platform and the ramp was clear as far as I knew. *It had been on Saturday previously when we left there.*" A photograph was exhibited to the witness and he was asked what it represented to him. He answered: "Well, it represents the spot where the object was lying, it was a piece of plywood with a piece of linoleum on it. And *it wasn't there to my knowledge at the time that the store was closed on Saturday. It was leaning up against the building some distance from that particular ramp or platform.* And in that particular neighborhood there are quite a few children through there all the time. We had a

difficult time keeping them away from there. And it's possible, no one knows, no one saw·it, it's possible that they had in some manner moved it and had just dropped it across that platform and left it." The injury to appellee occurred on Monday after the preceding Saturday referred to by Mr. Whitfield. Omitting all other questions involved, with respect to which I express no opinion, there was no direct evidence as to how long the board had been on the ramp when appellee fell except that of Mr. Whitfield and that was that it could not have been there longer than from late Saturday night or Sunday,. until Monday when appellee fell and that is not enough time to constitute constructive notice. The only other evidence as to how long the board had been on the ramp was the opinion of the appellee that it had been there two weeks or more. Assuming for the sake of argument that the facts given as a basis for the opinion were sufficient to authorize it, the positive testimony of Mr. Whitfield, unimpeached and uncontradicted, that the board was not on the ramp the preceding Saturday must control over the opinion evidence of the appellee, which is thoroughly consistent with the circumstantial opinion evidence. Mr. Whitfield's testimony is not contradictory or uncertain, construed as a whole. He did not use the expression "to the best of my knowledge," etc. Even if there could be any doubt about the first part of the statement, when the witness testified exactly where the board was located on the previous Saturday afternoon, it becomes quite clear what the whole statement meant. The rule above stated, to wit: that where a finding of fact may be inferred but is not demanded by circumstantial evidence, it will not support a verdict when by positive and uncontradicted testimony of an unimpeached witness perfectly consistent with the circumstantial evidence, it is shown that no such fact exists, is stated in *Myers v. Phillips,* 197 Ga. 536 (29 SE2d 700), cases cited therein and many other cases too numerous to cite.

I am authorized to state that Judge Eberhardt concurs in this dissent.