70391. LORIE et al. v. STANDARD OIL COMPANY et al.
(333 SE2d 110)

BIRDSONG, Presiding Judge.

This is an appeal from the grant of summary judgment to one of five named defendants, C. F. Tyler & Son, Inc. (Tyler). The plaintiffs Lorie sued Tyler and others for injuries received when the plaintiff Rodolfo Lorie, a gasoline service station employee and trained Army medic, went into an earth excavation to assist a worker who had been buried by a cave-in while gasoline tanks were being installed. Other defendants removed from the case are the gasoline station lessor Barrett and the company which rented a back-hoe machine (Porter Huggins, Inc.). Remaining are Chevron, the owner of the premises, and T. P. Herndon & Co. (Herndon) who contracted with Chevron to perform the excavation and install the tanks. Herndon and Tyler were the parties actually engaged in the excavation and installation. In granting summary judgment to Tyler, the trial court found that Tyler's employees were merely Herndon's "borrowed servants," under the rules in *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377 (276 SE2d 572), and thus any liability is imputed to Herndon and not Tyler. *Held:*

1. In *Six Flags*, the Supreme Court established the criteria for determination of status as a borrowed servant. The evidence must show that "(1) the special master [borrower] had complete control and direction of the servant for the occasion; (2) the general master [lender] had no such control, and (3) the special master had the exclusive right to discharge the servant." Id. p. 377.

On motion for summary judgment the evidence is viewed in a light most favorable to the respondent, and the respondent is given

the benefit of every doubt. Davis & Shulman, Ga. Practice & Procedure, §§ 9-9, 9-10 (4th ed.)

In that light, the evidence shows that the general contract was between Chevron and Herndon, a Florida company. Herndon supplied the work site supervisor. However, Tyler, a Savannah company, obtained the work permit from the City of Savannah Department of Inspections, by representing itself as general contractor. The trial court held that this evidence was "negligible" because it was explained that Mr. Tyler (president of C. F. Tyler, Inc.) obtained the permit merely as a convenience and favor to Herndon. However, whether this is so is a question of fact. The other evidence in the case is not conclusive in Tyler's favor. Herndon and Tyler had worked together on various jobs in Florida and Georgia for thirty years. Generally, Tyler constructs gas station buildings and Herndon puts in gasoline tanks. Tyler had obtained a work permit in the state of Florida for Herndon on another job. On this job, Tyler also allowed Herndon to use its local charge account and lent equipment to Herndon. Tyler charged Herndon cost plus ten percent for the use of Tyler's men and equipment. The OSHA report on the incident, which ran to 13 pages of investigation and descriptions, names Tyler as the general contractor. The report recognizes that the foreman was employed by Herndon, and recites that the employees of Tyler were "to work under the supervision of a subcontractor foreman ([employee] of T. P. Herndon & Co. of Jacksonville, Florida) to install the three 10,000 gallon . . . tanks. . . . The subcontractor foreman directed all activity at this job site." It also noted that "it was determined that the foreman, identified by the police officer . . . as the injured man [sic] boss, was actually an employee of T. P. Herndon & Co. — but this foreman was in charge and responsible for the job site. It was also noted that the injured man was an employee of C. F. Tyler & Son, Inc."

The OSHA report recited that the investigation was initiated by questioning the foreman, and that the inspection "covered all contractors." There was also a conference held by OSHA, attended by C. F. Tyler, the president of Tyler, Inc. Tyler was cited and as general contractor was fined by OSHA for the incident, and did not demur apparently because of the expense involved in challenging the report. The OSHA report is of course not evidence that Tyler was the general contractor, but, like the City of Savannah work permit, the fact that Tyler represented itself to be general contractor is evidence raising a question as to whether Tyler was indeed the general contractor, or at least retained such independence and control as to negate the conclusion that its employees were Herndon's borrowed servants.

There is also evidence that C. F. Tyler visited the work site every day or twice a day and in fact happened to arrive as the injured per-

sons were being placed in an ambulance. Mr. Tyler said his reason for visiting the job site was mere "curiosity," but this, when viewed in the light of all the evidence, raises questions of fact of control over his own employees. The president of Herndon, Mr. Strickland, testified that it was his understanding Mr. Tyler could instruct Tyler's men what to do, and that Tyler's employees were under Tyler's direction and control at all times. Strickland also stated that Mr. Tyler visited the job site to check on things and see if he could help; that Tyler could have made suggestions to the Herndon foreman and could have told his own men what to do. Strickland also stated that Tyler's men were probably equally under Herndon's foreman's direction and probably were doing what the foreman told them to do. The foreman, who was a Herndon employee, did not stay at the job site at all times but frequently travelled to another site nearby, particularly when Tyler's men were finishing the concrete. Mr. Tyler checked on the site when Tyler's men were finishing the concrete and, according to the foreman, Mr. Tyler had authority to supervise his men and could have told them to finish the concrete in a different way if had wanted to.

At the same time, the Herndon foreman testified in deposition that he himself had first contacted Tyler about the job in Savannah, and had asked Mr. Tyler if he could get Herndon a work permit and if he had any people that were free to assist him (Herndon) on the job. He also stated Tyler's men would come and go according to what he (the foreman) had for them to do. The foreman also made clear that in relation to the ultimate work objective Mr. Tyler did not control what his men did and never gave them any instruction, and that the foreman had control and authority of Tyler's men. If this evidence or Strickland's testimony is contradictory of other evidence offered by the foreman and Strickland, we must adjudge the evidence against Tyler on motion for summary judgment. See *Cook v. Delite Beauty Supply*, 165 Ga. App. 859, 860 (1) (303 SE2d 40).

On the basis of all this evidence, it cannot be said that no issue of fact remains that " '(1) the special master [Herndon] had complete control and direction of the servant for the occasion; (2) the general master [Tyler] had no such control, and (3) the special master [Herndon] had the exclusive right to discharge the servant,' " (*Six Flags*, supra, p. 377), so as to render Tyler's employees "borrowed" servants of Herndon and excuse Tyler of any liability. Whether Herndon through its foreman also had *exclusive* control and direction of Tyler's employees and whether Tyler had no control on this particular occasion, is also a question of fact (see *Six Flags*, supra).

The appellee urges that Mr. Tyler's, Strickland's and the foreman's testimony "as a whole" can leave no doubt that Tyler's employees were borrowed servants, but this per se involves weighing the evidence and this contention itself proves Tyler is *not* entitled to

summary judgment. On summary judgment we only seek to determine if there is an issue of fact and cannot determine what the evidence "as a whole" tends to prove.

The trial court erred in granting summary judgment to Tyler on the issue of borrowed servant.

2. The evidence establishes the non-existence of a joint venture because there was not " 'a right, express or implied, of each member of the joint venture to . . . control the . . . other.' " *Gilleland & Son v. Misener Marine Constr.*, 173 Ga. App. 713, 714 (327 SE2d 829). There is evidence that Herndon exercised control over Tyler's employees, but there is no evidence that Tyler controlled or had the right to control Herndon's employees. See also *Atlanta Metallic Casket Co. v. Southeastern Wholesale Furniture Co.*, 82 Ga. App. 353, 358 (61 SE2d 196).

*Judgment reversed. Carley and Sognier, JJ., concur.*

DECIDED JUNE 7, 1985 —
REHEARING DENIED JULY 8, 1985 — ▇▇▇▇▇▇▇

*Eugene C. Brooks IV*, for appellants.
*Arnold C. Young, Charles B. Mikell, Jr., Martin Kent, Jordan D. Morrow, Frank W. Seiler, Jr., William T. Daniel, Jr.*, for appellees.