## 76940. FLETCHER et al. v. FORD et al.
(377 SE2d 206)

McMURRAY, Presiding Judge.

Fran Ford and Walter Ford filed this medical malpractice action

and alleged that their infant son died because of Dr. Fletcher's negligent failure to advise them to take the child for emergency medical treatment. Dr. Fletcher denied liability and subsequently moved for summary judgment.

During the early evening of July 25, 1984, the Fords' infant son began displaying signs of illness. The child's body temperature was elevated, he was lethargic and the infant displayed signs of nausea. The Fords responded by administering cool baths and Tempra drops.[1] However, the child's condition worsened and "at approximately 8:00 o'clock p.m." Mrs. Ford called the child's pediatrician's office. She was told by personnel at the doctor's answering service that the office was closed, that Dr. Fletcher was on call and that he would return her call. About an hour elapsed, the child's condition continued to deteriorate and Dr. Fletcher did not return Mrs. Ford's call. "At approximately 9:10 p.m.," Mrs. Ford again called her child's doctor's office and was told by personnel at the answering service "that Dr. Fletcher is just getting ready to pick up his calls and that he would call . . . shortly." About "five minutes later," an unidentified woman called the Ford home, stated that she was calling on behalf of Dr. Fletcher and advised the Fords to continue treating the child with cool baths and Tempra drops. The unidentified woman suggested that the child had a stomach virus and also recommended that the Fords administer "Gatorade."

The next morning, Mrs. Ford brought her son to the pediatrician's office for treatment. The doctor immediately recognized that the child was suffering from meningitis and rushed the infant to the hospital. Two days later the Fords' son died.

From this and other information surrounding their child's death, Jonathan D. Winner, "a physician duly licensed to practice medicine in the State of Georgia," deposed that the Fords' child would have probably survived if "appropriate antibiotic therapy . . ." had been applied at the time the Fords received a response to their emergency telephone call.[2] Dr. Winner further deposed that "the [unidentified] woman caller . . . failed to exercise good and adequate medical judgment and failed to meet the [appropriate] standard of care by not advising Mrs. Ford to have the child seen by a doctor as soon as possible." Dr. Winner concluded that "whoever allowed [the unidentified woman] to return Mrs. Ford's call also failed to meet the standard of

---

[1] Tempra is a "trademark for preparations of acetaminophen." Dorland's Illustrated Medical Dictionary (25th ed.), p. 1547. Acetaminophen is a compound "used as an analgesic." Id. at 11.

[2] More specifically, Dr. Winner deposed that "[t]he type of bacterial meningitis which [the Fords' child] had, hemophilus influenza meningitis, has a mortality rate of less than 10%, with some more recent studies showing the mortality rate to be less than 5%."

care by permitting such a person to give medical advice concerning ill infants."

In opposition, Dr. Fletcher testified that he never received a message from the Fords and that he was totally unaware of the child or the child's illness until his return from a vacation which began the morning after the Fords received the call from the unidentified woman. Dr. Fletcher also testified that no one was authorized by him on that occasion to pick up messages or to call patients on his behalf. However, the night shift supervisor for the pediatrician's answering service testified that she examined a message slip which reflected the Fords' emergency telephone call and observed that the message slip "was stamped out and initialed as being given out . . ." shortly after the message was received. The night shift supervisor further testified that the Fords' emergency message was dispatched to Dr. Fletcher along with "several other messages. . . ."[3]

From this and other evidence, the trial court denied Dr. Fletcher's motion for summary judgment. This interlocutory appeal followed. *Held*:

1. Dr. Fletcher contends that the statements made by the unknown woman to Mrs. Ford were inadmissible hearsay.

" 'As a fundamental rule, the definition of hearsay does not include out-of-court statements which are not offered as proof of the facts asserted in such statement, but are offered merely as proof that such a statement was made. Assuming that the proof is limited to merely showing that the statement was made and not as evidence of the truth of the fact asserted in the statement, the statement is admissible as original evidence and does not concern the hearsay rule.' Green, Ga. Law of Evidence, (2d ed.), 369, § 218." *Walker v. State*, 187 Ga. App. 631, 633 (1) (371 SE2d 199). In the case sub judice, Mrs. Ford was not testifying as to the validity of the substance of the unidentified woman's statements, but as to her utterances and the time they were made. To this, Mrs. Ford is qualified to testify. See 5 Wigmore on Evidence 2, § 1361 (2) (Chadbourn rev. 1974).

2. " 'On motion for summary judgment the evidence is viewed in a light most favorable to the respondent, and the respondent is given the benefit of every doubt.' *Lorie v. Standard Oil Co.*, 175 Ga. App. 308 (333 SE2d 110). The movant has the burden to prove the non-existence of any genuine issue of material fact (OCGA § 9-11-56), and

---

[3] Personnel of the pediatrician's answering service testified that the custom of the answering service was to indicate on message slips to whom a message was directed unless it was given to the person to whom it was directed. The night shift supervisor for the answering service testified that she could remember nothing about the message slip documenting the Fords' emergency call other than the time the message was received and the time it was given out.

in so determining, the court will treat the respondent's paper with considerable indulgence. *Butler v. Terminix Intl.*, 175 Ga. App. 816 (334 SE2d 865)." *Mallard v. Jenkins*, 179 Ga. App. 582 (347 SE2d 339). In the case sub judice, it is undisputed that Dr. Fletcher was "on call" at the time Mrs. Ford placed the emergency telephone call and that he was then to be available for the Ford child's medical care. It is also undisputed that the pediatrician's answering service dispatched the Fords' emergency telephone call shortly after it was received. This evidence, along with Mrs. Ford's testimony that she twice contacted the pediatrician's answering service and that an unidentified woman returned her call on behalf of Dr. Fletcher, was sufficient to challenge Dr. Fletcher's testimony that he did not receive the Fords' emergency call. The trial court did not err in denying Dr. Fletcher's motion for summary judgment.

*Judgment affirmed. Deen, P. J., Banke, P. J., Sognier and Pope, JJ., concur. Birdsong, C. J., and Carley, J., concur specially. Beasley, J., concurs in the judgment only. Benham, J., dissents.*

CARLEY, Judge, concurring specially.

While I concur in the judgment affirming the denial of the motion for summary judgment, I cannot agree with the majority's conclusion in Division 1 that Mrs. Ford's testimony concerning the telephone call from an unknown individual purportedly calling on behalf of Dr. Fletcher was admissible and probative. In this connection, I completely agree with Division 2 of Judge Benham's dissent.

However, there is additional evidence in the record which makes it clear that Dr. Fletcher's summary judgment was properly denied. Ms. Sharon Bryan, a corporate executive with the answering service, testified that after the incident she talked with Dr. Fletcher who told her that "he felt the situation was an unavoidable one." More importantly, Dr. Fletcher stated to Ms. Bryan that "he had done everything he could as a doctor." This is certainly some evidence of appellant's involvement at the time of the relevant communications between the appellees, the answering service and the anonymous caller who gave medical advice. "[W]hile a party may not admit liability, as a mere conclusion of law, where the facts positively show the absence of any liability [cits.], a party may admit the existence of facts which would give rise to liability." *Rossville Fed. &c. Assn. v. Ins. Co. of N. America*, 121 Ga. App. 435, 440 (2) (174 SE2d 204) (1970). This admission against interest by Dr. Fletcher is some evidence of his having received the message and, therefore, it was not error to deny the motion for summary judgment.

I am authorized to state that Chief Judge Birdsong joins in this special concurrence.

BENHAM, Judge, dissenting.

Implicit in the majority's statement of the case is a holding that Dr. Fletcher's liability for negligence depends, as a threshold matter, on the fact that he or someone authorized by him to do so received notification from the answering service of Mrs. Ford's calls. I agree fully with that holding, but being of the opinion that the evidence does not support a finding that Dr. Fletcher or an agent of his got the message, I must file this dissent to the majority's judgment.

1. My first disagreement with the majority opinion concerns its recitation of testimony that "the Fords' emergency message was dispatched to Dr. Fletcher along with 'several other messages. . .'" That statement gives the erroneous impression that there was direct evidence that the message was given to Dr. Fletcher. Although the majority does partially explain in a footnote the inconclusiveness of the testimony cited, the erroneous impression remains. The answering service supervisor's testimony made clear, however, that the witness had no way of knowing to whom the message was given. The witness did not testify that there were no indications on the message slip concerning the identity of the recipient of the message, only that she did not remember seeing anything on the slip at the time she reviewed it other than the stamps showing when it was received and when it was given out. The message slip itself is no longer in existence and there is no record of which answering service employees took in and gave out the message.

2. My next disagreement spans both divisions of the majority opinion. While I agree with the quotation in the first division concerning hearsay, I cannot agree that Mrs. Ford offered the testimony only for the purpose of showing that she received such a call, and not for the purpose of establishing that since someone returned the call for Dr. Fletcher, he or an agent of his must have gotten the message. If, however, Mrs. Ford's testimony was offered solely to show that she got a telephone call, then the majority's reliance on it in the penultimate sentence of its opinion is misplaced: the testimony cannot be ruled admissible for the limited purpose of showing that a telephone call was received, then used for the purpose of establishing the truth of the contents, i.e., that the caller was calling on Dr. Fletcher's behalf.

That the unknown woman caller's assertion that she called on Dr. Fletcher's behalf has no probative value is established by the holding in *Price v. State*, 208 Ga. 695 (1) (69 SE2d 253) (1952): "The testimony of one person to a conversation had with another person over a telephone, in which the person testifying did not know the other person or recognize the other's voice, had not at that time even heard the voice, and had never heard it since, and the identity of such other person is not established otherwise than by what was said in the con-

versation itself, is hearsay. . ."

3. While tragedies such as the apparently preventable death of appellees' son touch us all, our responsibility to the law requires that our decisions be made on the hard facts in the record before us. The pertinent evidence in the present case consists of Dr. Fletcher's testimony that he did not receive the Fords' message, that he had authorized no one to receive messages for him, and that he did not authorize anyone to call the Fords on his behalf; countered by the Fords' evidence that they called their pediatrician's office, that a message was taken by the answering service, that Dr. Fletcher was on call, that the Fords' message was given out by the answering service, that no one remembers or can establish to whom the message was given, and that an unknown person who purported to be calling for Dr. Fletcher returned Mrs. Ford's call.

Without establishing a relationship between the unknown caller and Dr. Fletcher, the Fords are left with no evidence other than that their message, intended for Dr. Fletcher, was given to someone whose identity has not been established, and that the call was returned by someone whose identity has not been established. Those facts are not inconsistent with Dr. Fletcher's denial of receipt of the message.

When a movant for summary judgment produces, to establish a fact, the positive, uncontradicted testimony of an unimpeached witness, the opposing party's production of circumstantial evidence which is not inconsistent with the movant's positive evidence is not sufficient to create a question of fact and prevent the grant of summary judgment. *Fletcher Emerson &c. Co. v. Davis*, 134 Ga. App. 699 (4) (215 SE2d 725) (1975); *Helms v. Young*, 130 Ga. App. 344 (2) (203 SE2d 253) (1973). See also *Myers v. Phillips*, 197 Ga. 536 (4) (29 SE2d 700) (1944). The direct, positive, and uncontradicted testimony of Dr. Fletcher that he did not receive the message and that no one was authorized to receive messages for him, countered only by the Fords' showing that their message was given to someone whose identity is unknown, a showing entirely consistent with Dr. Fletcher's testimony, demanded the grant of summary judgment to Dr. Fletcher. I would, therefore, reverse the trial court's judgment.

DECIDED DECEMBER 5, 1988 —
REHEARING DENIED DECEMBER 19, 1988 —

*Allen & Ballard, William L. Ballard, Edward D. Flynn III*, for appellants.

*Harold D. Corlew*, for appellees.