62613, 62614. FLETCHER v. AMAX, INC. et al.; and vice versa.

BIRDSONG, Judge.
Employment Rights. The appellee (and cross-appellant) Amax, Inc., a New York corporation, purchased Dayton Fly Ash, Inc. prior to

1974. The president of Dayton Fly Ash, Barton Thomas, was installed as the president of the new corporation assuming Dayton's business, Amax Resource Recovery Systems Inc. (ARRS). Effective May 1, 1974, the appellant Fletcher was hired as a salesman for ARRS. Fletcher ultimately was assigned duties for ARRS, in Atlanta as a multi-state district manager. Late in 1978, Amax elected to sell ARRS to appellee Monier Resources Inc. The vice-president of ARRS (the appellee Cordiano) in February, 1979, announced to all ARRS employees that the sale of ARRS to Monier had been accomplished. Fletcher not wishing to continue his employment with Monier submitted a letter of resignation. Efforts were made to persuade him to change his mind and he was offered a new position at the home office of ARRS in Texas with additional responsibility and increased pay. Alternatively, Fletcher was offered a job as salesman in the Atlanta area but this would have been tantamount to a demotion. Fletcher persisted in his decision to leave Monier and seek employment with another company in a related business. Fletcher sought two months severance pay amounting to approximately $10,000. ARRS and Amax refused to pay severance pay contending that there was no valid or binding contract of employment and further that Fletcher had voluntarily resigned. Fletcher then brought the present action maintaining a failure by ARRS to pay him severance pay; wrongfully conspiring to deprive him of his severance pay and penalties based upon stubborn and litigious denial of his severance benefits. Each of the appellees (employers) filed a motion for summary judgment which was originally denied. Upon motion for reconsideration of the summary judgment actions, the trial court treated the motion for reconsideration as a new motion for summary judgment and granted summary judgment in favor of each of the appellees. In Case No. 62613 Fletcher brings his appeal enumerating as error the grant of the motions for summary judgment. In Case No. 62614 the appellees-cross appellants (employers Cordiano, Amax, Monier, and ARRS) filed a cross appeal urging error in certain assumptions by the trial court in its grant of their summary judgment. *Held:*

The essence of each appeal concerns itself with whether a valid employment contract existed between Fletcher and ARRS-Monier, and whether Fletcher's resignation was voluntary or at the convenience of ARRS.

Appellees (employers) argue strenuously that there was no written contract of employment and therefore Fletcher as an employee could be terminated at will. Their contention is that in the absence of a contract, there could be no recovery for employment rights. This statement of law is essentially correct. *American*

*Standard v. Jessee,* 150 Ga. App. 663 (258 SE2d 240). Appellee-employers cite several other cases standing for this same principle. However as we view the issue before us, these cases are not in point. Each of those cases dealt with an employee who had been involuntarily terminated and was suing for lost wages based upon the breach of an employment contract. In this case, there is no issue as to a violation by the employer of Fletcher's employment status. In this case Fletcher seeks severance pay following an amicable termination of his status with ARRS. Thus, rather than dealing with a breach of an employment contract, we are concerned with internal policies of ARRS set forth in a "Procedures and Policy Manual" issued by ARRS with the advice and consent of the parent company, Amax.

As pertinent, the Procedures and Policy Manual declared its purpose to be "to provide uniform and fair treatment of employees whose termination of employment is of a permanent nature, at the will of the company. . . . Terminations not included under this procedure are: Discharge for cause, voluntary resignation. . . ."

At first blush Fletcher's entitlement to severance pay would appear to be defeated by the requirements that termination be at the "will of the company" and not as the result of a voluntary resignation. However, the president of ARRS testified as follows: "As president of the division [ARRS], it was my duty to uphold the terms and conditions as stated in the policies and procedures manual, more particularly on termination and at the convenience of the company . . . all employees would have the benefit of the termination conditions, severance pay, what have you, in the event they did not care to join [the purchaser]. . . . If an employee of ARRS saw fit, for whatever reason . . . not to continue his employment with [Monier], he then would receive 100 percent of the benefit detailed by Amax, Inc. I was also instructed, both by Corporate Development [a part of Amax, Inc.] and my immediate superior [Mr. Crowl] to state to all employees categorically that the aim of Amax was their protection, whomever was the acquiree [sic] of ARRS . . . if, for example, he was offered a lateral position and chose not to accept it . . . I was told he was then to be given full benefit of his severance. . . . I'm saying he had a choice. They could assume employment with the new owner, or they could elect to take their severance." All of this was communicated to the president of ARRS (Thomas) by Mr. Crowl, the group executive and vice-president of Amax, Inc. In turn, ARRS employees, including Fletcher, were informed of this policy on numerous occasions.

When one considers the testimony of the president of ARRS speaking for the parent corporation Amax (the author of the

Procedures and Policy Manual), it appears clear that the appellee-employer interpreted the Procedures and Policy Manual to allow an employee voluntarily to leave his employment if management and ownership changed hands and this would be considered to be at the will of ARRS. We conclude therefore, that under its own interpretation of its procedures, ARRS considered what would appear to be a voluntary resignation by Fletcher in fact to be a termination at the will of the company thus entitling Fletcher to severance pay. While we are not prepared to say that the contract is so unambiguous as to demand a verdict for Fletcher, we do conclude that material issues of fact remain as to the nature of Fletcher's termination of employment, i.e., whether it was a voluntary resignation or a termination at the will of the company. For that reason alone, the trial court erred in granting summary judgment to the employers. The cardinal rule of the summary procedure is that the court can neither resolve the facts nor reconcile the issues but only look to ascertain that there is an issue. *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736, 739 (123 SE2d 179).

Appellants (employers) argue however that Fletcher did not enter into his employment based on any promises contained in the Procedures and Policy Manual and in any event that any such promises are without consideration on his part and unenforceable by him. We find this argument to be without merit. It is the accepted law of this state that an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them, whether the plan is public or private, and whether or not the employee contributes to the plan. *Adams v. Hercules, Inc.,* 245 Ga. 464 (265 SE2d 781); *Hercules, Inc. v. Adams,* 150 Ga. App. 223 (257 SE2d 289). We therefore reject any argument by the employers that any contract for severance pay is void as being without consideration.

Based on the foregoing, we conclude the trial court erred in granting summary judgment to the appellee-employers but did not err in concluding that there was a contract existing between Fletcher and the employers for the payment of severance pay. The remaining bases for cross appellant-employers' enumerations of error have been examined and found to be without merit.

*Judgment reversed. Shulman, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 24, 1981 —
REHEARING DENIED DECEMBER 9, 1981 —

*Harry W. Bassler,* for appellant.

*A. Lee Parks, Jr., Stan Kreimer, Jr., Robert N. Meals,* for appellees.