### 65721. AMAX, INC. et al. v. FLETCHER.

BANKE, Judge.

The plaintiff/appellee filed suit to recover two months' severance pay allegedly owed him by his former employer, and a jury returned a verdict in his favor. In a previous appearance of the case before this court, we reversed a grant of summary judgment to the defendants, finding that a material issue of fact remained as to whether the plaintiff left his employment voluntarily or at the will of his employer. *Fletcher v. Amax, Inc.,* 160 Ga. App. 692 (288 SE2d 49) (1981). The evidence adduced at the subsequent trial, construed in favor of the verdict, supports the following findings.

In May of 1974, the plaintiff accepted a job as a sales representative for Amax Resources Recovery Systems, Inc. (ARRS), and by 1978 he had achieved the position of district manager of the Atlanta office. ARRS was a wholly owned subsidiary of Amax, Inc. In mid-1978, rumors began to circulate among ARRS personnel to the effect that Amax intended to sell ARRS and that the sale would result in a wholesale dismissal of ARRS employees. In order to stabilize the situation and prevent a loss of its personnel prior to the sale, certain Amax officials assured various ARRS staff members, including the plaintiff, that if they would stay on the job until the sale was consummated, they would receive severance pay in accordance with a written schedule set forth in ARRS "Standard Procedure No. E-7." This schedule, by its terms, applied only to employees terminated "at the convenience of the company."

In reliance on these assurances regarding severance pay, the plaintiff stayed on the job until February 22, 1979, when he was informed by the president of ARRS, Joseph Cordiano, that ARRS had been sold to Monier Resources, Inc. The next day, the plaintiff drafted a letter of resignation to ARRS, requesting payment of "whatever severance pay and vacation pay is due me in accordance

with company policy." In response to this letter, both Mr. Cordiano and an official of Monier Resources attempted to persuade the plaintiff to stay, offering him his choice between an administrative position in San Antonio similar to the one he had in Atlanta or a job as sales representative. The plaintiff declined these offers, concluding that a move to San Antonio without a substantial increase in salary would be economically disadvantageous to him and that a return to the job of sales representative would be tantamount to a demotion. Amax officials subsequently refused his request for severance pay on the ground that his termination was voluntary rather than at the convenience of the company.

Named as defendants in this lawsuit were Amax, Inc., Monier Resources, Inc., and Joseph Cordiano. However, only Amax and Monier Resources have appealed. *Held:*

1. While it is true that ARRS "Standard Procedure No. E-7" did not by its terms apply to voluntary resignations, the jury could reasonably have concluded that, by offering the appellee a choice between a change of position which he perceived as a demotion and a transfer which he perceived as economically disadvantageous, the company was, in effect, encouraging him to resign. Thus, the evidence authorized the jury to conclude that the appellee's departure was "at the convenience of the company." More importantly, however, the jury could have found in favor of the appellee based on evidence that Cordiano and other Amax officials had promised to give him severance pay in accordance with "Standard Procedure No. E-7," in return for his remaining on the job until the sale of ARRS had been consummated. Although the appellants contend that any such promise was unenforceable due to the fact that the appellee's contract of employment was not in writing, this argument was decided adversely to them in the previous appearance of the case before this court. See *Fletcher v. Amax, Inc.,* supra, at 693-695. Accord, *Adams v. Hercules, Inc.,* 245 Ga. 464 (265 SE2d 781) (1980). Furthermore, the Statute of Frauds does not bar the enforcement of a contract "[w]here there has been performance on one side, accepted by the other in accordance with the contract. . ." OCGA § 13-5-31 (2) (Code Ann. § 20-402).

2. We reject the appellants' contention that the appellee failed to comply with the terms of the oral agreement because he left ARRS before the sale to the new owner was actually closed and the stock was transferred. The appellee did not resign until after he had been advised by Cordiano that the sale had taken place. Indeed, he did not finalize his resignation until he had discussed with an official of the new owner the possibilities of his remaining with the company under the new regime. The evidence does not demand the conclusion that

the agreement required the appellee to continue on the job until the stock was transferred, and the jury was clearly authorized to conclude that he fulfilled his part of the bargain by remaining until the contract of sale was executed.

3. The trial court did not err in allowing two former ARRS employees to testify that they had received severance pay upon their voluntary departure from ARRS after the sale of the corporation to Monier. Although the conduct of the parties in other transactions is generally irrelevant, the contrary is true where "the nature of the action . . . renders necessary or proper the investigation of such conduct." OCGA § 24-2-2 (Code Ann. § 38-202). The fact that ARRS paid severance benefits to certain employees who left voluntarily after the sale was completed was certainly relevant as evidence that the appellants had previously acknowledged an obligation to make such payments. While the trial court may have erred in allowing a third former ARRS employee to testify that the company paid him severance benefits upon his departure *before* the sale went through, we consider this error harmless in the context of the evidence as a whole.

4. The trial court erred in charging the provisions of OCGA § 13-2-2 (3) (Code Ann. § 20-704), regarding the effect of certain business or trade customs upon contractual obligations, as there was no evidence of any such custom or practice in this case. Again, however, we find the error harmless when considered in the context of all the evidence presented at trial and the principles of law actually involved in the case.

5. For the above reasons, we conclude that the trial court did not err in denying the appellants' motions for directed verdict, for judgment notwithstanding the verdict, or for new trial.

*Judgment affirmed. Shulman, C. J., Deen, P. J., Quillian, P. J., McMurray, P. J., Birdsong, Sognier and Pope, JJ., concur. Carley, J., dissents.*

DECIDED MAY 4, 1983 —
REHEARING DENIED JUNE 2, 1983 — ▮▮▮▮▮▮

*Stanley E. Kreimer, Jr., A. Leroy Parks, Jr.,* for appellants. *Harry W. Bassler,* for appellee.

CARLEY, Judge, dissenting.

I agree with the majority's conclusion in the first part of Division 4 of the opinion that "[t]he trial court erred in charging the provisions of OCGA § 13-2-2 (3), regarding the effect of certain business or trade customs upon contractual obligations, as there was no evidence of

any such custom or practice in this case." In this case, the only evidence relied upon by the appellee to support the charge was the testimony that this appellee paid to its own employees, severance pay as discussed in Division 3 of the majority opinion. "Individual habits of dealing do not make a universal custom which by implication enters into the contract and forms a part thereof . . ." *Robertson v. Wilder & Co.,* 69 Ga. 340 (2a) (1882). Thus, the majority is correct in concluding that there was no evidence admitted which would support a charge under OCGA § 13-2-2 (3) (Code Ann. § 20-704).

However, the majority is incorrect, in my opinion, when it holds that the charge on this code section was harmless error. OCGA § 13-2-2 (3) (Code Ann. § 20-704) provides that: "The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became by implication, a part of the contract . . ." Although the majority has held the testimony of two of the three former employees to be relevant and admissible for other reasons, such testimony was certainly not admissible to show that the "practice" of the company "became by implication, a part of the contract." However, since the jury was charged as to this code section, I don't see how we can say that the jury did not erroneously understand that it could consider the evidence of the payment to the other employees as being a custom which, by implication, became part of the contract between appellant and appellee. I believe that the error was harmful and that, therefore, the trial court erred in denying the motion for a new trial. I respectfully dissent.