### 69192. SAWGRASS BUILDERS, INC. v. REALTY COOPERATIVE, INC.
(323 SE2d 243)

DEEN, Presiding Judge.

On June 23, 1983, the appellant, Sawgrass Builders, Inc., entered into contracts to purchase two separately owned tracts of land, with the appellee realtor as co-broker. Both sales contracts specified a real estate broker's commission of seven percent of the purchase price. At the closing of the sales on September 1, 1983, however, it was discovered that the closing statements provided for a broker's commission of only five percent. At that time, the appellant uttered an additional check for $2915, which represented the appellee's share of the additional two percent commission omitted from the closing statements. Later that day the appellant stopped payment on the check.

On September 20, 1983, the appellee demanded payment of the $2915 plus a five percent service charge, but the appellant refused, and subsequently the appellee commenced this action seeking the commission due and attorney fees. The appellant admitted utterance of the check, but, in its verified answer, alleged fraud and/or mistake in its issuance. The trial court granted summary judgment and attorney fees of $745.50 for the appellee, from which this appeal followed. *Held*:

1. "A check, executed and delivered, is a contract in writing by which the drawer contracts with the payee that the bank will pay to the payee therein the amount designated on presentation." *Bailey v. Polote*, 152 Ga. App. 255, 256 (262 SE2d 551) (1979). A check is an unconditional promise to pay, and a stop payment order does not discharge the maker's liability on the check. *Mason v. Blayton*, 119 Ga. App. 203 (166 SE2d 601) (1969). When the signature on the check is admitted, production of the instrument, as in the instant case, enti-

tles the holder "to recover on it unless the defendant establishes a defense." OCGA § 11-3-307 (2); *Bailey v. Polote*, supra at 257.

The appellant contends that he did establish a defense of fraud in the inducement and/or mistake, sufficient to withstand the appellee's motion for summary judgment. As proof of either defense, it emphasizes the two percent commission discrepancy in the closing statements and the actual sales contracts, and the variance between the sales contracts regarding the liability for broker's commissions. (On one contract, which was a standard form furnished by the appellee, the provision for the seller to be responsible for such commissions was changed to relegate that responsibility to the appellant, but the other standard contract was unaltered.) We, however, find none of these discrepancies sufficient to create any genuine issue of fact.

Regardless of the different commission percentages indicated on the sales contracts and the closing statements, as well as the contract provisions identifying the party responsible for the broker's commission, it is uncontroverted that the appellee insisted at the closing that the appellant was responsible for the commissions, which were set at seven percent of the purchase prices; likewise, it is clear that even if the appellant harbored some belief that the commission negotiated had been only five percent, it nevertheless had agreed at the closing to pay the entire seven percent figure for both sales. In short, where the evidence showed only that the appellant agreed to the terms demanded by the appellee at the time of closing, notwithstanding the possible different terms originally negotiated between the parties, the appellant established no acceptable defense of mistake.

Similarly, the appellant's verified answer stated no defense of fraud. "[A]bsent special circumstances . . . [a party] . . . may attack a contract in a court of law on grounds of fraud only where they have exercised due diligence in protecting themselves, instead of merely relying blindly upon respresentations of another later claimed to have been false." *Walsh v. Campbell*, 130 Ga. App. 194, 197 (202 SE2d 657) (1973). See also *Granite Mgt. Svcs. v. Usry*, 130 Ga. App. 667 (204 SE2d 362) (1974). In this case, the sales contracts originally executed by the appellant provided for broker's commissions of seven percent, and there was no evidence that the appellant was prevented from reading those contracts prior to signing. Further, the appellant realized the two percent discrepancy contained in the closing statements at the time of the closing. Under these circumstances, we conclude that the appellant's asserted reliance upon the alleged misrepresentation at the closing by the appellee that the negotiated commission had always been seven percent must be deemed unreasonable and thus fatal to any defense of fraud. Accordingly, the trial court properly granted summary judgment for the appellee.

2. OCGA § 13-6-11 provides that the expenses of litigation may

be allowed "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense . . ." Where no defense exists, as in this case, forcing a plaintiff to resort to the courts in order to collect is plainly causing him "unnecessary trouble and expense." *Brannon Enterprises v. Deaton,* 159 Ga. App. 685 (285 SE2d 58) (1981); *Buffalo Cab Co. v. Williams,* 126 Ga. App. 522 (191 SE2d 317) (1972). The trial court thus properly awarded the appellee the expenses of litigation.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED OCTOBER 5, 1984.

*C. Alan Mullinax,* for appellant.
*Richard W. Wilson, Jr.,* for appellee.