71573. CAPRIULO et al. v. BANKERS LIFE COMPANY et al.
71574. SYSCO CORPORATION v. CAPRIULO et al.
(344 SE2d 430)

POPE, Judge.

Joseph Capriulo was employed as a salesman for Georgia Foods, Inc. in the summer of 1982. As an employee of Georgia Foods, he was covered by group insurance policies issued by The Bankers Life Company (Bankers Life). In late July or early August 1982 Capriulo was contacted by Tom O'Brien about coming to work for Sysco Corporation (Sysco). O'Brien had formerly been with Georgia Foods and had been Capriulo's boss. Because he suffered from Crohn's disease, a chronic disorder, Capriulo was concerned about the insurance coverage afforded by Sysco. While O'Brien had been with Georgia Foods he had been aware that Capriulo suffered from Crohn's disease and had, on occasion, visited him in the hospital during treatment for the disease. Capriulo expressed his concern about the insurance coverage to O'Brien and to another representative of Sysco in a series of meetings

in which the subject of Capriulo coming to work for Sysco was discussed. He was told that his insurance at Sysco would pick up where his coverage with Georgia Foods left off. He was told that Sysco had group insurance with Bankers Life also, and that he would be covered on the same basis as he was at Georgia Foods. Specifically, he was told that his insurance at Sysco would cover his treatment for Crohn's disease.

On August 19, 1982 Capriulo joined Sysco. Subsequently, he submitted claims to Bankers Life based upon treatment for Crohn's disease. Bankers Life denied these claims on the basis that its group policy with Sysco excluded coverage for pre-existing conditions for which treatment had been received within 3 months of becoming insured under the Sysco group policy, until either 3 months passed without any treatment for the pre-existing condition, or the person insured had been covered under the Sysco group policy for 12 months, whichever came first. It is undisputed that Capriulo was treated for Crohn's disease almost continuously from 1976. He became totally disabled by the disease in February 1983. Bankers Life denied Capriulo's claim for total disability benefits based upon a provision in the disability policy substantially similar to that described above.

Capriulo and his wife Mary instituted this action in five counts: one against Bankers Life for breach of contract; one against Sysco for breach of contract; a count against Sysco alleging negligence and fraud; a count alleging intentional infliction of emotional distress against both Bankers Life and Sysco; and one count alleging loss of consortium. Both Bankers Life and Sysco moved for summary judgment. Bankers Life's motion was granted in its entirety; Sysco's was granted in all respects but for the allegations concerning negligence and the consortium claim relating to that. In Case No. 71573, the Capriulos appeal the grant of both motions for summary judgment. In Case No. 71574, Sysco appeals the failure of the trial court to give it total summary judgment.

1. In regard to the breach of contract claim against Bankers Life, we note that two policies are at issue, one for disability, the other for medical expenses. As noted above, both policies contain exclusions for pre-existing conditions. Capriulo argues that there remains an issue of fact with regard to coverage due to the following provision found in the medical policy: "NO LOSS OF COVERAGE. Notwithstanding any provision of this Policy to the contrary, there shall be no loss of coverage with respect to medical insurance which is a replacement of such insurance under a prior plan terminated immediately prior to the date of issue of this Policy." The corresponding provision in the disability policy reads: "Notwithstanding any provision of this Policy to the contrary, there shall be no loss of coverage with respect to insurance which is a replacement for insurance, terminated immediately

prior to the date of issue of this Policy, under a group plan of the Group Policyholder underwritten by another carrier."

This type of clause is designed to provide continuity of benefits when a group policyholder switches from one carrier to another, or from one policy to another. Clearly, in regard to the policy for disability, Capriulo is not covered. The language of the "no loss of coverage" clause is much better in the disability policy than it is in the medical policy. Nonetheless, the language of the medical policy is not sufficient to create a jury issue. "The whole contract must be looked to in arriving at the construction of any part. [Cits.] Construction of ambiguous contracts is the duty of the court, and no jury question is raised unless after application of the pertinent rules of construction the ambiguity remains. [Cit.] 'It does not follow that merely because there are two possible interpretations which might be employed in construing a contract the matter automatically becomes a question for the jury. If that were true the court would rarely, if ever, construe a contract as [OCGA § 13-2-1] declares its duty to be. The role and function of a court is higher than that of a mere referee.' [Cit.]" *Erquitt v. Solomon*, 135 Ga. App. 502, 503 (218 SE2d 172) (1975).

It is clear from the contract for group medical insurance, read as a whole, that the clause relied upon by Capriulo applies to replacement of one group plan with another by the group policyholder. It cannot be used to prevent the exclusion for pre-existing conditions from operating in regard to Capriulo. Therefore, the trial court did not err in granting Bankers Life summary judgment.

2. Our decision regarding the propriety of the trial court's ruling in regard to Capriulo's claim for fraud against Sysco hinges on the issue of whether a confidential relationship could be shown to have existed between Capriulo and agents for Sysco. For purposes of summary judgment, Sysco concedes that its agents, O'Brien and Sommers, represented to Capriulo while he was considering employment with Sysco that its group major medical policy and its group disability policy would provide coverage to Capriulo in regard to Crohn's disease. Sysco maintains that these representations cannot support an action for fraud because they are representations as to a matter of law, not fact. See *Robbins v. Nat. Bank of Ga.*, 241 Ga. 538 (2) (246 SE2d 660) (1978). Sysco contends that Capriulo failed to ask for a copy of the group policy to determine firsthand the extent of coverage and thus cannot prove justifiable reliance. Sysco also argues that Capriulo's testimony at deposition where he stated that he felt Sysco's agents did not intentionally deceive him in regard to coverage, but merely spoke mistakenly and in ignorance, demonstrates lack of scienter on the part of Sysco.

All of these issues are necessarily secondary to whether a confidential relationship existed. If a confidential relationship can be

shown to have existed, Capriulo may be able to show justifiable reliance even if the representations were to matters of law. See *Johnson v. Sherrer*, 197 Ga. 392 (1) (29 SE2d 581) (1944); *Drake v. Thyer Mfg. Corp.*, 105 Ga. App. 20 (2) (123 SE2d 457) (1961). "Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." OCGA § 23-2-58. "The above Code section does not attempt to comprehensively enumerate the cases wherein the relation of mutual confidence is present. The showing of a relationship *in fact* which justifies the reposing of confidence by one party in another is all the law requires. [OCGA § 23-2-53] expressly goes beyond the strict fiduciary relations of the parties and states that the obligation to communicate may arise from the particular circumstances of the case. The same is true as to [OCGA § 23-2-58]." (Punctuation omitted.) *Cochran v. Murrah*, 235 Ga. 304, 307 (219 SE2d 421) (1975). In *Cochran* the Supreme Court affirmed the denial of summary judgment to an employer and his insurer where an employee of the employer had been injured and later had signed a release in favor of the employer and the insurer at the request of the employer. The employer represented to the employee that the papers he signed obligated the insurer to pay certain sums. The employee did not read the release even though he admitted that he could read. The court held that it was for jury determination as to whether a confidential relationship existed which would excuse the normal requirement to read the document. There was evidence that the employee had worked for the employer for eight years, lived in a home provided by the employer rent free, and trusted the employer to pay him whatever wages were due him for his work.

Even though the dissent goes on at some length about the fact that Capriulo did not specifically plead a confidential relationship in his complaint for fraud, the dissent eventually recognizes that the issue here on appeal from summary judgment is not the specificity of pleading but whether there exist issues of fact upon which a jury must pass. Relying upon the cases of *Bulmer v. Southern Bell Tel. &c. Co.*, 170 Ga. App. 659 (317 SE2d 893) (1984), and *Cole v. Cates*, 113 Ga. App. 540 (149 SE2d 165) (1966), the dissent asserts that there is no evidence of record to support the theory of confidential relationship from which fraud could be shown. We must first note that the dissent's assertion that we hold that the relationship between a prospective employer and prospective employee is a fiduciary relationship is mistaken. Of course, such a relationship generally is not one of fiduciary trust. However, as recognized by the Supreme Court in

*Cochran v. Murrah*, supra, relationships which ordinarily would not be considered to be confidential can, given particular facts, be confidential relationships. In *Cochran* the relationship in question was one of employer-employee. The Supreme Court stated that generally this relationship is one of arms-length bargaining; however, given the particular facts of that case which we set out above, there existed sufficient facts upon which the jury could find a confidential relationship. That is precisely the situation before us in the present case. Thus, *Bulmer*, supra, does not control this case. In *Bulmer* no special relationship was shown. Here there is such evidence of record.

The dissent also relies upon the case of *Cole v. Cates*, supra, particularly, "[a] confidential relationship does not exist prior to the contract or legal relationship creating it, *unless it exists for other reasons.*" (Emphasis supplied.) Id. at 544. Again, the dissent states a general rule but ignores the qualification to the general rule and the effect of that qualification upon the present case. It is interesting and instructive to note that the Supreme Court in *Cochran* expressly adopted the language of the dissent in *Cole v. Cates*, supra, and held that OCGA § 23-2-58 does not comprehensively list all the cases in which a confidential relationship exists. The dissent in *Cole*, as did the Supreme Court in *Cochran*, recognized that a confidential relationship can be shown even in a situation where one ordinarily would not be found.

This is the case here. The dissent admits that there is evidence to suggest a special relationship between Capriulo and Sysco's agent, O'Brien, but the dissent says that special (confidential) relationship cannot be imputed to Sysco. Of course, it is elementary that a corporation cannot act but through its agents. In order to further Sysco's business, O'Brien desired to capture a particular market. O'Brien initiated talks with a man, Capriulo, whom he felt could do the job. It was through O'Brien's special relationship with Capriulo that Sysco could achieve the goal of capturing a new market through Capriulo's knowledge and skill. To hold that there could be a special relationship between O'Brien and Capriulo and not between Capriulo and Sysco in this circumstance is totally without logic and fairness.

Sysco argues that there can be no confidential relationship here because the parties stood in the relation of potential employer and applicant for employment. Sysco relies upon the case of *Bulmer v. Southern Bell Tel. &c. Co.*, 170 Ga. App. 659, supra. We are unpersuaded that *Bulmer* is controlling here. There, the court merely held that there was no evidence of any special relationship between the prospective employee and the potential employer. The situation in the present case is distinguishable. We must view the evidence of record in a light most favorable to the respondent on motion for summary judgment. *Lorie v. Standard Oil Co.*, 175 Ga. App. 308 (1) (333

SE2d 110) (1985). So doing, we find that agents for Sysco approached Capriulo to induce him to come to work for Sysco. One of those agents, Tom O'Brien, had specific knowledge that one of Capriulo's necessities in an employment relationship was insurance coverage for his chronic malady, Crohn's disease. Capriulo testified on deposition that while O'Brien was employed at Georgia Foods he had visited him in the hospital while Capriulo was being treated for the disease. The two men had discussed the specifics of the disease which required almost daily medication or injections to treat. O'Brien knew of Capriulo's condition for over two years while working at Georgia Foods with him. When contacted by O'Brien about the job with Sysco, one of Capriulo's first questions was about the insurance coverage as it related to his disease. O'Brien assured him he would be covered at Sysco. At subsequent meetings about the job with O'Brien and Sommers, Capriulo was again assured that he would be covered by Sysco's group policies.

From these facts it is a jury issue as to whether a confidential relationship *in fact* as set out in OCGA § 23-2-58 existed between Capriulo and Sysco's agents. It also is for the jury to determine whether Capriulo justifiably relied on the representations. "While a party must exercise reasonable diligence to protect himself against the fraud of another, he is not bound to exhaust all means at his command to ascertain the truth before relying upon the representations. Ordinarily the question whether the complaining party could ascertain the falsity of the representations by proper diligence is for determination by the jury. [Cit.]" *Johnson v. Sherrer,* supra at 395.

We are not persuaded by Sysco's argument that Capriulo's deposition testimony negates the issue of fraud and thus demands summary judgment for Sysco because he stated that he did not feel or think that Sysco's agents intentionally deceived him in regard to insurance coverage. The record also discloses that Capriulo testified that he did not know whether the representations were made with intentional falseness. Sysco has adduced no evidence that its agents did not make the statements knowing that they were false. Therefore, Sysco has failed to pierce the allegations of Capriulo's complaint with regard to fraud. For the reasons stated above, the trial court erred in granting Sysco partial summary judgment in regard to the issue of fraud.

3. We also find that the trial court erred in granting Sysco partial summary judgment in regard to Capriulo's breach of contract claim. Sysco argues that any claim based on contract is unenforceable because it is based on an oral contract for employment, terminable at will, relying on *Jacobs v. Ga.-Pacific Corp.,* 172 Ga. App. 319 (323 SE2d 238) (1984). If Capriulo were suing in regard to his employment status, no doubt Sysco would be correct in its reliance on *Jacobs.*

However, Capriulo's contract claim is based on the promise that there would be no interruption of his current insurance benefits, and that he would be covered in regard to Crohn's disease. In effect, Capriulo's claim is for adjusted or additional compensation (in the form of the group insurance benefits covering treatment for Crohn's disease) earned while in Sysco's employ. The health and disability insurance at issue here is on the same footing as a pension, which has been held to be adjusted compensation for services rendered. *Cole v. Foster*, 207 Ga. 416 (4) (61 SE2d 814) (1950). The fact that the employee makes no contribution does not make the plan a mere gratuity. *Atlantic Steel Co. v. Kitchens*, 228 Ga. 708, 713 (187 SE2d 824) (1972). Sysco's argument that any promise made in this situation is unenforceable has been decided adversely to it. See *Fletcher v. Amax*, 160 Ga. App. 692 (288 SE2d 49) (1981), on appeal after remand, 166 Ga. App. 789 (1) (305 SE2d 601) (1983). See also *Adams v. Hercules*, 245 Ga. 464 (265 SE2d 781) (1980).

On the record before us, there remains a genuine issue of fact to be determined by the jury in regard to the contract claim. It does not avail Sysco to argue that the policies in themselves would not cover Capriulo. Sysco has adduced no evidence to contradict Capriulo's positive statements that he was told that he would be covered. We do not know if Sysco's agents had in mind asking its group carrier for a waiver of the pre-existing condition exclusion, or if Sysco had another means altogether to meet the alleged promise of coverage.

4. Our rulings in Divisions 2 and 3 above control Sysco's cross-appeal. The trial court correctly held that genuine issues of fact remain with regard to Capriulo's claim for negligence.

*Judgment affirmed in part and reversed in part in Case No. 71573. Judgment affirmed in Case No. 71574. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, and Benham, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

I would agree with the trial court's ruling on fraud for the reason that there is no allegation in the complaint of any confidential or special or fiduciary relationship nor any evidence to show that one existed so as to make that an issue in the case. Confidential relations are defined in OCGA § 23-2-58. As recognized by the majority here, such a relationship is a threshold requirement for Capriulo's claim of fraud.

The complaint alleging fraud merely states that Sysco administered the group health plan and was responsible for notifying prospective employees of the terms of both policies, and that it owed Capriulo the duty to inform him accurately of the terms and conditions thereof. Thus, he alleges nothing more than the relationship be-

tween a prospective employee and a prospective employer, and the majority is holding that such a relationship is a fiduciary one which requires utmost good faith. However, as said in *Bulmer v. Southern Bell Tel. &c. Co.*, 170 Ga. App. 659, 660 (317 SE2d 893) (1984): "Nothing is alleged to show there was any such special relationship between appellant as an applicant for employment and appellee as a prospective employer."

Fraud, of course, is a special matter which must be pled. "[T]he circumstance constituting fraud . . . shall be stated with particularity." OCGA § 9-11-9 (b). Fraud is not something which may be presumed. OCGA § 23-2-57. Where the minimum degree of particularity is lacking, however, judgment on the pleadings would not be available but a motion for more definite statement would lie to give the pleader an opportunity to amend and supply the missing ingredients. *Tucker v. Chung Studio*, 142 Ga. App. 818, 819 (3) (237 SE2d 223) (1977).

But this case does not come to us in that posture. Instead, it is here on summary judgment, after the plaintiff has had ample opportunity to *show* at least enough evidence to create an issue of fact as to whether there existed a confidential relation between himself and the corporation. The latter is saying, in effect, that even if a confidential relationship had been pleaded, there is no evidence to raise such an issue which the complaint could be amended to embrace.

If the requisite allegations of fraud are contained in the pleadings, the defendant must pierce them by evidence in order to win summary judgment. *Foster v. Economy Developers*, 146 Ga. App. 282, 284 (5) (246 SE2d 366) (1978). In that case, the evidence was insufficient to survive summary judgment for the defendant. " 'Appellees pierced appellant's pleadings by showing that essential elements of fraud and misrepresentation were lacking, and irrespective of any issues of fact with regard to other essential elements the appellees were entitled to a summary judgment [as to the issue of fraud] as a matter of law. [Cit.]' [Cit.]" Id. at 285-286. Here what is missing is any evidence of the prerequisite of a confidential relation.

*Sawgrass Bldrs. v. Realty Cooperative*, 172 Ga. App. 324 (323 SE2d 243) (1984) is another case illustrating that even if fraud is properly pled, the pleader must establish it by evidence which is sufficient to withstand a motion for summary judgment.

The situation here, where a confidential relation is not pled and the defendant builds a record of evidence which it believes entitles it to summary judgment, is akin to that presented in *Bailey v. Polote*, 152 Ga. App. 255, 256 (2) (262 SE2d 551) (1979). The matters required to be specially pled were absent, but on motion for summary judgment there was evidence in support of them, thus creating issues of fact which precluded summary judgment for the moving party.

The evidence in the instant case, however, does not rise to create

such issues. The fact that Sysco knew through the substantial knowledge of its agent O'Brien of Capriulo's condition and need for insurance coverage, would not create a fiduciary relationship. Perhaps a special relationship based on friendship and *former* employee/employer relationship existed between Capriulo and O'Brien, but that would not create a fiduciary relationship between Capriulo and O'Brien's new employer. As to Capriulo and Sysco, they were nothing more than arms length bargaining parties in a business transaction. Sysco's knowledge of the need would not create a fiduciary relationship. Otherwise, every prospective employer would assume this more stringent liability if it knew enough about its prospective employee.

Although the term "fiduciary or confidential relation" is a very broad one, it does not embrace every relationship. "The mere fact that the defendant had confidence in the party with whom he contracted does not constitute a confidential relationship or a 'similar relationship of mutual confidence' within the meaning of Code § 37-707 [now OCGA § 23-2-58] (*Dover v. Burns*, 186 Ga. 19, 26 (196 SE 785)) so as to require the application of Code § 37-708 [now OCGA § 23-2-59]. Even if we should assume that the proposed contract, which the defendant thought he was entering into, did create a confidential relationship between the parties, this cannot be twisted by fallacious reasoning into a confidential relationship prior thereto. A confidential relationship does not exist prior to the contract or legal relationship creating it, unless it exists for other reasons. [Cit.]" *Cole v. Cates*, 113 Ga. App. 540, 544 (149 SE2d 165) (1966). There it was recognized even by the dissent that it does not apply to relations of mere friendship. Id. at 548.

In the present case, there must be some relation giving rise to a law-imposed duty, since there could be no contract-imposed duty inasmuch as no contract had yet been entered into. Compare *Calhoun v. Kut-Kwik Corp.*, 172 Ga. App. 511 (323 SE2d 699) (1984). Giving plaintiff the benefit of every reasonable inference, the court's grant of summary judgment on fraud is correct because of the complete absence of a confidential relationship either by contract or by operation of law. See *Feltman v. Nat. Bank of Ga.*, 146 Ga. App. 434, 436 (2) (246 SE2d 447) (1978).

I agree with the remainder of the opinion.

DECIDED MARCH 19, 1986 —
REHEARING DENIED APRIL 4, 1986 — 

*Frank J. Klosik, Jr., H. Edward Marks, Jr.*, for appellants (case no. 71573).

*James A. Gober, Allen I. Hirsch, Ben Kingree III*, for appellees.

*James A. Gober, Allen I. Hirsch,* for appellant (case no. 71574). *Frank J. Klosik, Jr., H. Edward Marks, Jr.,* for appellees.