## A96A1896. IRONS v. CSX TRANSPORTATION, INC.
### (481 SE2d 575)

SMITH, Judge.

While acting within the scope of his employment with CSX on June 10, 1988, Jackie Irons was injured when a truck driven by Taylor crossed the centerline and struck his vehicle. Taylor died as a result of the collision. A short time later, Roland, a claims representative employed by CSX, contacted Irons concerning the collision. In addition to discussing the June 10 incident, Roland and Irons negotiated a separate Federal Employers Liability Act (FELA) claim arising out of another incident. They settled the separate claim on June 27, 1988. This action addresses the issue of whether alleged statements made and alleged actions undertaken by Roland in connection with the June 10 collision created a confidential relationship between CSX and Irons. We hold that no such relationship was created and affirm.

In his complaint, Irons alleged breach of fiduciary relationship and fraud. He claimed that Roland entered settlement negotiations on his behalf "with regard to his claim against the third party tortfeasor" and thus created a confidential relationship between Irons and CSX. According to Irons, CSX "exercised a controlling influence over the will, conduct and interest of [Irons] due to the fact [that Irons] trusted [CSX] to handle his claim reasonably and prudently and to advise him of all action necessary to preserve any claims he might have against the uninsured motorist carrier or the uninsured tortfeasor." He alleged that CSX breached this duty by failing to disclose that it was necessary for him to file suit against the

uninsured tortfeasor in order to preserve his claim against the UM carrier and that the statute of limitation was two years.[1] In a second count, Irons claimed that CSX, through Roland, fraudulently advised him that he need not file suit against Taylor's estate. It is undisputed that Roland, on behalf of CSX, made several settlement offers to Irons. Irons rejected these offers because he thought he "was entitled to more" and that "the offer could have been better." CSX moved for summary judgment on the grounds that no fiduciary relationship existed and that Irons could not prove all five elements of a claim for fraud. Irons appeals the trial court's grant of the motion. Although Irons originally enumerated error with regard to both the breach of fiduciary duty and fraud claims, he successfully moved this Court to allow him to dismiss the enumeration concerning the fraud claim.

As for the claim for breach of fiduciary duty, Irons contends that fact issues remain for jury determination as to whether Roland's actions created a confidential relationship between Irons and CSX and whether CSX breached its fiduciary duties with regard to this relationship. He claims that such a relationship arose when Roland visited him at the hospital and told him "not to worry, that he would take care of everything." Irons understood this statement to mean that Roland would "look into" Taylor's insurance. He maintains that despite this alleged assurance, Roland did not investigate the existence of available insurance coverage or assets of Taylor's estate.

A confidential relationship is created whenever a party exercises "a controlling influence over the will, conduct, and interest of another" or "from a similar relationship of mutual confidence, the law requires the utmost good faith." OCGA § 23-2-58. Although there is no confidential relationship between an insured and the insurer's adjuster, *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165, 166 (268 SE2d 676) (1980), we must determine whether such a relationship was created by virtue of Roland's status as an employee of CSX. An employer-employee relationship is usually one "of arms-length bargaining," *Cochran v. Murrah*, 235 Ga. 304, 307 (219 SE2d 421) (1975), but a confidential relationship between employer and employee may sometimes arise. Id.

In *Cochran*, the employee-plaintiff, a farm laborer, was injured. While plaintiff was bedridden and on pain medication, his employer told him to sign documents, which he did not read, including a

---

[1] According to Irons, Roland erroneously informed him that Taylor's vehicle was uninsured and consequently that suit against Taylor's estate was not worthwhile because recovery was doubtful. Irons also alleged that although Roland contacted him several times to discuss settlement, he did not inform him of the applicable statute of limitation until the statute of limitation expired, after which the UM carrier withdrew all offers.

release that severely limited any recovery.[2] Plaintiff subsequently filed suit seeking cancellation of the release, as well as other relief. Id. at 305. The Supreme Court concluded that despite plaintiff's failure to read the documents, he was not precluded from recovery because evidence was presented from which a jury could determine the existence of a confidential relationship: plaintiff had worked for his employer for over eight years; he lived rent free in a house provided by his employer on his employer's property; he accepted "without question whatever wages the defendant determined were due him," *Kienel v. Lanier*, 190 Ga. App. 201, 204 (378 SE2d 359) (1989); and the employer induced him to sign the documents by misrepresenting that his medical bills and lost wages would be paid. *Cochran*, supra at 307-308.

In *Capriulo v. Bankers Life Co.*, 178 Ga. App. 635 (344 SE2d 430) (1986), this Court reached a similar conclusion. There, evidence was presented that plaintiff, who suffered from a serious chronic disease, was induced to work for the employer. The employer's agent, who had formerly worked with plaintiff at another business, knew that plaintiff suffered from the disease. He told plaintiff that his disease would be covered under the employer's insurance. Id. at 637. After these representations were made, plaintiff went to work for the employer. The employer's insurer subsequently failed to cover claims made by plaintiff, who brought suit alleging fraud and other misdeeds against the insurer. Because the employer's agent "had specific knowledge" for over two years that plaintiff needed insurance coverage and assured plaintiff on several occasions that he would receive insurance coverage for his disease, we concluded there was a jury issue as to whether a confidential relationship existed. Id. at 640.[3]

Even when construed in Irons's favor, the facts here are unlike those in *Cochran* and *Capriulo*: they do not show that Roland exercised a controlling influence over Irons, and they do not show that the two men interacted from positions of mutual confidence so that Irons should have believed anything other than that their relationship was an arms-length — and even adversarial — one. Contrary to the allegations in Irons's complaint, the facts do not indicate that Roland entered into settlement negotiations on Irons's behalf. Irons admitted that he never sought legal advice from Roland. The two

---

[2] The release relieved the employer and his insurance company from all claims arising out of the employee's accident in exchange for a small sum of money. *Cochran*, supra at 306.

[3] Irons also contends that this case is similar to *Vitner v. Funk*, 182 Ga. App. 39 (354 SE2d 666) (1987). It is true that in that case, this Court determined that a jury could find that a confidential relationship existed. Id. at 42 (2). But the facts here differ substantially from those in *Vitner*, which involved a longtime business relationship between medical doctors involving a complicated "business structure" and "their interactions and dealings over the course of several years and their common goal." Id. *Vitner* is not apt.

men did not share a longtime personal friendship or relationship like that shared by plaintiff and the employer's agent in *Capriulo*. And unlike the agent in *Capriulo*, Roland did not induce Irons to work for CSX by holding out a promise of insurance benefits. Instead, Roland was a claims adjuster who attempted to negotiate a claim with Irons. Although Roland first visited Irons in the hospital, nothing in the record indicates that Irons was without his faculties or dependent on any other individual to make decisions for him, as was the plaintiff in *Cochran*.

On the contrary, the record shows Irons was capable of making his own decisions and did so. Unlike the plaintiff in *Cochran*, Irons was not illiterate or uneducated. Roland made settlement offers to Irons on more than one occasion, offers Irons refused in hopes of increasing his recovery. Irons admitted that even after the statute of limitation expired on a potential claim against CSX or for UM benefits, Roland offered him $25,000. CSX gave Irons "time to think about it" for about two months. He did not take the offer, however, because it was "not satisfactory to me." Unlike the plaintiff in *Cochran*, who did as he was told by his employer, Irons refused several offers and attempted to negotiate for more money. Irons and CSX clearly were in an adversarial position with regard to compensation from CSX for Irons's losses, a position inconsistent with Irons's contention that a confidential, fiduciary relationship existed. Irons's deposition testimony that he believed or trusted Roland does not change this result. "The mere fact that one reposes trust and confidence in another does not create a confidential relationship. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." (Citations and punctuation omitted.) *Kienel v. Lanier*, supra, 190 Ga. App. at 203 (2). Because no evidence has been presented that the relationship was anything other than one of arms-length bargaining between parties with adverse interests, the relationship was not confidential, and the trial court correctly granted summary judgment to CSX.

*Judgment affirmed. Andrews, C. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 12, 1997 —

*Daniel & Lowe, Robert J. Lowe, Jr.,* for appellant.
*Fulcher, Hagler, Reed, Hanks & Harper, James W. Purcell, Scott W. Kelly,* for appellee.