A03A0569. STRAIT v. REID.
(585 SE2d 640)

BARNES, Judge.

James Strait sued William Reid for specific performance of a lease. Following discovery, Reid moved for summary judgment, arguing that the parties never had a meeting of the minds and therefore no enforceable contract existed. The trial court agreed and granted summary judgment to Reid. Strait appeals, enumerating ten errors. For the reasons that follow, we conclude that genuine issues of material fact exist as to whether the men agreed on terms, and therefore we reverse.

Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001). Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and con-

clusions therefrom must be construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

Both parties agree that Strait, an orthodontist, rented office space from Reid, a dentist who practiced out of another suite in his building. Additional space became available in Reid's building in December 2000, which Strait wanted to rent. Reid prepared a proposed lease and gave Strait a copy on December 13, 2000, and the men met to discuss the terms on December 27, 2000.

The parties dispute what happened at that meeting. According to Strait, they went through the lease item by item, came to an agreement on each of four disputed terms, and wrote in the agreed terms. Each had his own copy, and each wrote the agreed changes on his copy. Both men then initialed each change on each copy, and then Strait signed both leases. Reid, who had previously signed and photocopied the lease with his signature, which he had given to Strait, dated both copies next to his signature. According to Strait, they shook hands on a "done deal," and Reid said he would make a copy of the keys to give to Strait.

Reid, on the other hand, testified that he and Strait did not reach an agreement on these four disputed terms, but merely discussed them. Reid explained that he went ahead and signed the lease, a photocopy of which he gave Strait on December 13, because he thought the lease was going to be a "slam dunk" and he was trying to satisfy an "up and coming" tenant. He further explained that he made notes on his copy of the lease so he could remember what Strait wanted when he returned to the draft later to prepare a new offer, and that he initialed the items, had Strait execute both copies, and dated his signature and photocopied signature "to indicate my willingness to work with him."

When he went back through his copy of the lease to create a second offer, he said, he scratched through his notes and Strait's initials, and wrote in the terms he was prepared to offer. Therefore, his copy differed from Strait's in four main areas, in addition to having "rough draft 12-2000" written on the front page.

*Late fee.* First, while Strait's copy indicated that a late fee of $100 would accrue after the tenth day of the month, the amount in Reid's copy appears to have been altered from $100 to $200, with the addition of the writing "12 noon."

*Use of premises.* In the use of premises clause, the typed sentence on both copies reads, "Premises shall be used for Orthodontist office purposes and no other." On Strait's copy, the word "dental" was written in after "Orthodontist," then struck through, and "Orthodontic-dental procedures" was written in. Both men initialed the change. On Reid's copy, "orthodontic-dental procedures" is written in, and then scratched out. Strait's initials are scratched out, the typed phrase "and no other" is struck through, and "only" is written in.

*Insurance.* On Strait's copy, the following sentence was struck through: "Lessee shall maintain at its own cost and expense, a) insurance in an amount adequate to cover the cost of replacement of all decorations and improvements in the leased premises in the event of a loss." The two men initialed the following handwritten sentence: "Lessee shall maintain at his cost insurance to cover amount personal decoration and improvements." On Reid's copy, nothing was struck through, but the word "personal" was added before "decorations and improvements."

*Addendum.* Strait's copy of the last page of the contract, titled Addendum and providing that Reid would pay for new flooring and paint, included no handwritten notations, while Reid's copy provides that he must approve in writing all construction plans and that the front and rear entry halls must be left intact.

The parties agree that Reid contacted Strait's office manager the day after their December 2000 meeting and advised her to have the utilities changed into Strait's name because the former tenant's service was due to be shut off at the end of the month and Reid was worried about frozen pipes and other damage. Strait's manager testified that Reid said he and Strait had finished the lease and she should contact the gas and power companies immediately because the previous tenant was shutting off service; Reid testified that he told her that it looked like they would be able to reach a deal, and he was concerned about frozen pipes and subsequent damage so she should go ahead and switch the utilities. The gas and electric services were changed to Strait's name for a short time, and he eventually paid a $26 electric bill and a $97 gas bill for a portion of the January 2001 utilities on the disputed space. Strait also paid Reid the January rent on the new space along with the rent on his old space.

The two men met again on January 9, 2001. Strait testified that Reid asked him to come by, and then presented him with a new lease containing terms that differed from those they had agreed on earlier. Strait said that they had already made a deal, and did not want to renegotiate its terms. Reid testified that they met to finalize the agreement, and that Strait became irate that Reid would not agree to all of Strait's terms. Strait continued to pay rent on both suites every

month for some time, and Reid rebated the rent for the disputed suite each month.

In its order granting summary judgment to Reid, the trial court made numerous findings of fact and conclusions of law. The court concluded that Strait rejected Reid's initial offer, that his proposed changes constituted a counteroffer, and that Reid rejected Strait's counteroffer, holding, "The initials affixed next to the counteroffer terms do not denote any agreement between the parties as to the counteroffer." The court then notes the differences in the terms written on the two copies of the lease, and concludes,

> The foregoing variations in material terms show that there was no meeting of the minds as to all terms sufficient to create a binding agreement between the parties. As there was [no] meeting of the minds between the parties, the Court holds that a binding lease agreement does not exist.

A valid contract requires four things: parties able to contract, consideration, definite subject matter, and "the assent of the parties to the terms of the contract." OCGA § 13-3-1. Three of those requirements are clearly met in this case, the only dispute being whether Strait and Reid assented to the terms of the lease, as evidenced by their copies. That the two copies are different now is not dispositive of the issue before us. Strait says that Reid changed the agreed-upon terms on his copy of the lease and wanted to disavow the contract they had already made. If the facts are as Strait presents them, then the parties did reach an agreement, which Reid later attempted to repudiate. Reid says that Strait made a counteroffer which Reid agreed to consider. If the facts are as Reid presents them, then the parties did not reach an agreement. This factual dispute constitutes a genuine issue of material fact that is not ripe for adjudication by summary judgment, but must be determined by a factfinder. Therefore, we reverse the trial court's grant of summary judgment to Reid.

*Judgment reversed. Andrews, P. J., and Adams, J., concur.*

## ON MOTION FOR RECONSIDERATION.

Reid argues on reconsideration that Strait's testimony regarding the execution of the lease should be eliminated because Strait testified in his deposition that he saw Reid sign both copies of the lease, and then later stipulated to the findings of a document expert who determined that one of Reid's signatures was photocopied, although the initials and signature on Reid's copy of the lease and the dates by his signature on both copies were original. The rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), does not require that all of Strait's testimony must be disregarded because the

record contains contradictory testimony regarding one fact. Rather, the court in *Prophecy* held that "[w]here the favorable portion of a party's self-contradictory testimony is the only evidence of his right to recover or of his defense, the opposing party is entitled to [summary judgment]." Id. at 28 (1).

The court continued,

> [W]here testimony is contradictory, if a reasonable explanation is offered for the contradiction, the testimony will not be construed against the party-witness. The burden rests upon the party giving the contradictory testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge.

*Prophecy*, 256 Ga. at 30 (2). In this case, pretermitting whether Strait offered a reasonable explanation of the contradiction, we assume to be true that version of the contradicted fact least favorable to Strait, that Reid's signature on one of the leases was photocopied and not original. The existence of an original signature is not dispositive of the issue in this case, because "assent to the terms of a contract may be given other than by signatures." (Punctuation and footnote omitted.) *Legg v. Stovall Tire & Marine*, 245 Ga. App. 594, 596 (538 SE2d 489) (2000).

*Motion for reconsideration denied.*

DECIDED JUNE 24, 2003 —
RECONSIDERATION DENIED JULY 17, 2003 — 

*Polatty & Sullivan, George J. Polatty, Jr.*, for appellant.
*Wilson, Morton & Downs, Robert E. Wilson, Lori D. Crosby*, for appellee.