A03A2264. CRAMP v. GEORGIA-PACIFIC CORPORATION et al.
(596 SE2d 212)

ANDREWS, Presiding Judge.

Robin Cramp sued Georgia-Pacific Corporation and Unisource Worldwide, Inc. for fraud. The trial court granted Georgia-Pacific's and Unisource's motion for summary judgment. Cramp appeals and we affirm for the reasons set forth below.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). A defendant need not produce any evidence to obtain summary judgment, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. Id. Our review is de novo. *Supchak v. Pruitt,* 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

Cramp was employed by Unisource as vice president of customer service from 1995 until Georgia-Pacific acquired control of Unisource

---

in July 1999. Before the acquisition, Unisource provided additional severance benefits to some of its employees, including Cramp. Unisource agreed that if Cramp's employment was terminated other than for cause, or should he resign following a change of control, between April 16, 1999 and March 31, 2000, that Cramp would be entitled to 12 months continued salary, with the first six months guaranteed and the remaining six months subject to offset by subsequent employment.

After the acquisition, Unisource continued operations with its new headquarters in Norcross. Michael Houghton, the vice president of marketing for Georgia-Pacific, offered Cramp "employment as Vice President — Customer Service at Georgia-Pacific's headquarters in Atlanta." Houghton told Cramp that "we want you to come down to Atlanta and continue the job you're doing." The employment offer was contingent on Cramp's release of his rights to the severance benefits previously provided by Unisource. In his written offer, Houghton informed Cramp:

> As you are no doubt aware, employment at Georgia-Pacific, as with most employers, is "at will" and thus can be terminated at any time and for any reason not prohibited by law, either at the option of the employee or the option of the company. Similarly, as a matter of policy, Georgia-Pacific reserves the right to make changes in the terms and conditions of employment of all of its regular salaried employees.

Cramp accepted the offer, moved to Atlanta, and began work on September 1, 1999, at the same salary he had been making before the acquisition. It is apparent that although the involved parties refer to Georgia-Pacific and the post-acquisition Unisource interchangeably, Unisource retained its separate legal identity and Cramp actually continued to work for Unisource. If Cramp had not accepted Houghton's offer to move to Atlanta, Cramp's employment with Unisource would have been terminated.

Georgia-Pacific designated Charles Tufano as president of the post-acquisition Unisource. Tufano met with Cramp about Cramp's duties. Tufano told Cramp that, unlike his pre-acquisition practice, Cramp should not hold quarterly customer service councils with the vice presidents of the local customer service centers. Tufano did not want Cramp to "collect Metrics," or comparative performance measures, on Unisource's customer service centers. When what Cramp referred to as "inconsistencies" arose between the customer service centers, Tufano sent two other vice presidents to the different centers to collect information, although Cramp deposed that was part of what Cramp considered to be his job.

In or around June 2000, Paul Jordan replaced Houghton and became Cramp's direct supervisor. Jordan told Cramp that the communications department would report to Cramp, but then decided that another vice president would be assigned that responsibility. Jordan and Tufano met with the vice presidents of the customer service centers without participation by Cramp. In May 2001, Jordan told Cramp that a data warehousing project that Cramp had been overseeing was being terminated and that as a consequence Cramp's position was being eliminated. Cramp was terminated effective May 31, 2001.

The elements of a fraud claim are: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff. *Pyle v. City of Cedartown*, 240 Ga. App. 445, 447 (1) (524 SE2d 7) (1999). Cramp admits that his employment was "at will" and that he cannot maintain a cause of action for an alleged misrepresentation concerning the length of employment, or promise related to future compensation. See, e.g., *Edwards v. Central Ga. HHS, Inc.*, 253 Ga. App. 304 (558 SE2d 815) (2002) (at-will employee could not maintain fraud claim based on employer's promise to pay future bonus). Rather, Cramp argues that he was fraudulently induced to give up his additional compensation rights, move to Atlanta, and enter into employment with the post-acquisition Unisource through a misrepresentation of present fact about the nature of his job.

Cramp contends that Georgia-Pacific executives represented to him that the same job Cramp had with Unisource existed and that Cramp would be performing it, but that no such position existed when he came to Atlanta. However, the evidence shows that Cramp was employed under the title of vice president of customer service when he came to Atlanta. Any representation made by Houghton or other Georgia-Pacific officers about the particular responsibilities of Cramp's position could not be justifiably relied upon by Cramp because such a representation was an unenforceable promise in the context of Cramp's at-will employment and cannot form the basis of a fraud claim. See *Taylor v. AMISUB, Inc.*, 186 Ga. App. 834, 836 (2) (368 SE2d 791) (1988) (plaintiffs were hired by defendant with promise that they would have the jobs they had with previous employer; summary judgment to defendant was affirmed even though the plaintiffs' jobs were altered). See also *Edwards*, supra, 253 Ga. App. at 305 (1) (promises upon which plaintiff relied to establish fraud claim were unenforceable because the underlying employment contract, being terminable at will, was unenforceable); *Alston v. Brown Transport Corp.*, 182 Ga. App. 632, 633 (2) (356 SE2d 517) (1987) (oral promises upon which fraud action relied could not be enforced);

*Adamson v. Maddox,* 111 Ga. App. 533, 536 (3) (142 SE2d 313) (1965) (unenforceable promise may not be used to show justifiable reliance). Cramp extends his argument by maintaining that there was, in effect, no job for him to do, but Cramp had responsibilities and he was paid, and so this argument is not sustained by the evidence.

Cramp refers us to *Ga. Elec. Co. v. Rycroft,* 259 Ga. 155 (378 SE2d 111) (1989), *Plane v. Uniforce MIS Svcs. of Ga.,* 223 Ga. App. 731 (479 SE2d 18) (1996), *Capriulo v. Bankers Life Co.,* 178 Ga. App. 635 (344 SE2d 430) (1986), and an Eleventh Circuit decision interpreting Georgia law, *Wilson v. S & L Acquisition Co.,* 940 F2d 1429 (11th Cir. 1991). These decisions are inapposite to the case at bar. *Rycroft* deals with the law of workers' compensation and is not applicable. The allegedly fraudulent misrepresentations considered in *Wilson* were not misrepresentations about job duties. *Wilson,* supra, 940 F2d at 1439-1441. In *Capriulo,* our analysis focused on whether the prospective employee could establish justifiable reliance through a confidential relationship, and no such relationship is alleged here. *Capriulo,* supra, 178 Ga. App. at 637-638 (2).

The plaintiff in *Plane* was induced by the defendant to leave his current employment for a position that did not exist. Cramp tries to draw parallels between *Plane* and this case by arguing that he was told that the same job he had held before existed but that it did not. However, the defendant employer in *Plane* was in the business of providing consultants to work for clients and paid its employees on an hourly basis for work done for those clients. The promised consulting position was never made available to the plaintiff, the defendant never had the client contract to provide it, and the plaintiff apparently never worked and was never paid. *Plane,* supra, 223 Ga. App. at 732. In contrast, Cramp worked for almost two years, and he was compensated.

Because Georgia-Pacific and Unisource have demonstrated an absence of evidence to support an essential element of Cramp's fraud claim, the trial court correctly granted their motion for summary judgment.

*Judgment affirmed. Adams, J., concurs. Barnes, J., concurs in the judgment only.*

BARNES, Judge, concurring in the judgment only.

I agree with the majority's conclusion that we should affirm the trial court's grant of summary judgment to the defendants in this fraud case because, with his extended employment as Vice President of Customer Service, Cramp cannot make a case that Georgia-Pacific never intended to allow him to work in that position. I cannot fully concur with the opinion, however, because the majority overstates its position. One can sue for the benefits one has earned even when one

is an at-will employee. Therefore, even an at-will employee should be able to sue for fraud if the fraud occurred before the at-will employee was terminated. See *Parker v. Crider Poultry*, 275 Ga. 361, 362-363 (2) (565 SE2d 797) (2002).

Otherwise, this court would be allowing an employer to induce an individual to give up a substantial benefit or relocate, all the while intending to terminate the employee as soon as the employee agreed to the relocation or waiver of benefits. See *E. D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 359-360 (2) (359 SE2d 148) (1987). Deliberate fraud should not be sanctioned by this court, even implicitly.

Accordingly, I must concur in the judgment only.

DECIDED MARCH 3, 2004.

*Betts & Katz, David E. Betts, Stephen M. Katz*, for appellant.
*Troutman Sanders, Alston D. Correll III*, for appellees.