A08A1488. FORD v. CAFFREY.

(666 SE2d 623)

PHIPPS, Judge.

Robert Ford was a Georgia Bureau of Investigation (GBI) employee assigned to a federally-funded, multi-jurisdictional drug task force based in Atlanta. While employed by the United States Drug Enforcement Agency (DEA), Ronald Caffrey was appointed as

---

[15] *Miller v. State*, 275 Ga. 32, 37-38 (5) (561 SE2d 810) (2002).

director of the Atlanta task force. Ford brought this action complaining that during his directorship Caffrey made defamatory statements about him to members of various state and federal law enforcement agencies. Caffrey moved for summary judgment or to dismiss under the Georgia Tort Claims Act (GTCA), on grounds that he had become an employee of the GBI at the time in question and that any statements he made concerning Ford were within the scope of his official duties. Ford appeals the trial court's grant of Caffrey's motion. We find no error and affirm.

"Since the trial court considered matters outside the pleadings, the motion to dismiss was converted to one for summary judgment."[1] Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] Further, "[a] defendant need not produce any evidence to obtain summary judgment, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim."[3]

The task force of which Ford and Caffrey were members is known as the High Intensity Drug Trafficking Area (HIDTA). The federal government provides funding for the task force, and law enforcement agencies at all levels of government provide manpower. There are approximately 28 HIDTA's throughout the country. The Atlanta HIDTA is governed by an executive board. The Atlanta HIDTA director is responsible for the daily operations of the task force and is hired and fired by the executive board. Caffrey, a longtime DEA special agent and administrator, began serving as the Atlanta HIDTA director in 1997. Ford, who had been a special agent of the GBI, was assigned to and became a special agent at HIDTA in 1995.

Ford claims that Caffrey libeled him in two memoranda. The first is a September 2004 memorandum that Caffrey, as director of the Atlanta HIDTA, sent to GBI Director Vernon Keenan, as chairman of the Atlanta HIDTA executive board. In that memorandum, Caffrey requested Ford's immediate transfer from the Atlanta HIDTA program. Caffrey complained of Ford's attempt to usurp his authority as director by, among other things, spreading disinformation about him, as well as Ford's refusal to coordinate his and other HIDTA employees' activities with HIDTA supervisors and his attempted misuse of HIDTA resources. The other memorandum in which Ford complains that he was libeled was sent in October 2004

---

[1] *Hardin v. Phillips*, 249 Ga. App. 541, n. 1 (547 SE2d 565) (2001) (citation omitted).
[2] *Wang v. Moore*, 247 Ga. App. 666-667 (544 SE2d 486) (2001).
[3] *Cramp v. Ga.-Pacific Corp.*, 266 Ga. App. 38 (596 SE2d 212) (2004) (citation omitted).

by Caffrey as Atlanta HIDTA director to the Atlanta HIDTA executive board members. In that memorandum, Caffrey stated that he had requested Ford's transfer from HIDTA back to the GBI, because Ford had impeded the efficient operation of the HIDTA program by spreading disinformation and dissension among program personnel in an attempt to usurp his authority.

Ford charges Caffrey with slander based on negative statements Caffrey made about him to Theodore Jackson, after he had retired as special agent in charge of the Atlanta FBI office, and to Milton Nix when he was a member of the Georgia State Board of Pardons and Paroles.

The GTCA constitutes the exclusive remedy for any tort committed by a state officer or employee while acting within the scope of his or her official duties or employment.[4] Such an action must proceed against the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually.[5] The GTCA includes within its definition of "state officer or employee," "elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state."[6]

The state's waiver of its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment is, however, subject to various exceptions and limitations set forth in the GTCA.[7] Exceptions exist for state liability for losses resulting from libel and slander.[8] Thus, if Caffrey committed the libelous and slanderous acts charged to him as a state employee within the scope of his official duties or employment, both Caffrey and the state are exempt from liability. Caffrey, however, is subject to personal liability either if he was not a state employee or if he committed such acts outside the scope of his official duties or employment.

1. The first question presented is whether the record establishes, as a matter of law, that Caffrey was a state employee.

On this issue, Caffrey testified in an affidavit in support of his motion for summary judgment that although he was initially hired as an independent contractor for HIDTA, he became a GBI grant-funded employee shortly after his appointment as director and

---

[4] OCGA § 50-21-25 (a).
[5] OCGA § 50-21-25 (b).
[6] OCGA § 50-21-22 (7).
[7] OCGA § 50-21-23.
[8] OCGA § 50-21-24 (7).

remained so until 2005 when he again became an independent contractor. He further testified that, while he was a grant-funded GBI employee, he received paychecks from the State of Georgia, participated in the state pension plan, accrued vacation time and sick leave pursuant to state guidelines, was issued a GBI vehicle, and was subject to annual employment reviews by the GBI. In his deposition, Caffrey explained that the Atlanta HIDTA's executive board decided that he should become a GBI employee so that the State of Georgia could procure tort liability insurance for him.

Ford argues, however, that on the question of whether Caffrey, as well as other HIDTA personnel in positions similar to his, were GBI employees, Caffrey gave testimony in his deposition that conflicted with his affidavit testimony. In this regard, Caffrey deposed that while he was the Atlanta HIDTA director, he was informed by the HIDTA personnel office that, because of inconsistencies between GBI's and HIDTA's organization tables, he should represent himself as an HIDTA employee rather than a GBI employee. In his deposition, Caffrey also described other HIDTA personnel whose salaries were paid by GBI through federal grants, not as GBI employees, but rather as employees who had been hired by HIDTA to work at HIDTA but paid for through the GBI. Ford also relies on a February 2005 memorandum in which Keenan asserted that, as GBI director, he had no authority to take any action against Caffrey in 2005 because Caffrey had an employment agreement with the Atlanta HIDTA executive board. In addition, Ford argues that an issue of fact remains as to whether Caffrey was a GBI employee because he did not support his testimony that he received pay and other benefits of state employment with documentation.

We find no merit in Ford's arguments. If Ford had wished to challenge Caffrey's testimony that he received pay and other benefits of employment from the state, Ford could have requested documentation of his employment in discovery. Any failure by Caffrey to have produced such documentation would have given rise to an inference that no such documentation, and therefore no such employment, existed.[9] Because none of that happened, Caffrey's affidavit testimony stands uncontradicted and establishes, as a matter of law, that he was an employee of the GBI.[10] Caffrey's deposition testimony does not negate his affidavit testimony on this question, but rather

---

[9] See OCGA § 24-4-22.

[10] See generally *Teachers' Retirement System &c. v. Forehand*, 234 Ga. App. 437, 441 (506 SE2d 913) (1998).

creates an issue as to whether he was a dual employee of both the GBI and HIDTA.[11]

2. The next question is whether, as a matter of law, Caffrey was acting within the scope of his official duties or employment.

(a) As to his libel claim, Ford argues that it was not within the scope of Caffrey's official duties or employment as HIDTA director to provide the chairman and members of the executive board with memoranda containing false and malicious statements about HIDTA employees. But asking the executive board to approve the transfer of a HIDTA employee from the HIDTA program unquestionably was within the scope of Caffrey's duties. And "[b]oth the provisions of the GTCA and the case law interpreting it demonstrate that the Act provides immunity from liability for torts committed during a state employee's performance of official duties without regard to intent or malice."[12] "Where the state employee acts in the prosecution and within the scope of his official duties, intentional wrongful conduct comes within and remains within the scope of employment."[13] Therefore, any libelous statements attributed to Caffrey were made within the scope of his official duties.

(b) As to his slander claim, Ford argues that because Caffrey made the allegedly false and malicious statements to individuals (Nix and Jackson) who were not active members of HIDTA, they were not made within the scope of his official duties or employment. But the record contains Nix's affidavit, in which he testified that the only conversations he had with Caffrey about Ford concerned their different management styles. Jackson also gave an affidavit in which he testified that Caffrey never said anything to him about Ford that he considered slanderous or defamatory. In his deposition, Ford acknowledged that neither Nix nor Jackson had related specifically what Caffrey had said about him. Ford claims, nonetheless, that the tone of their conversations with him indicated that the comments were negative. But even negative comments about a person are not in and of themselves slanderous. The record lacks evidence to support the essential elements of Ford's claim of slander.[14] A shadowy semblance of an issue is not enough to defeat a motion for summary judgment.[15]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

---

[11] See 27 AmJur2d, Employment Relationship § 5, p. 557 (1996).

[12] *Hardin v. Phillips*, supra at 544 (1) (punctuation and footnote omitted).

[13] *Davis v. Standifer*, 275 Ga. App. 769, 771 (1) (a) (621 SE2d 852) (2005) (citations and punctuation omitted).

[14] See generally *Adams v. Carlisle*, 278 Ga. App. 777, 788 (4) (630 SE2d 529) (2006).

[15] *Anglin v. Harris*, 244 Ga. App. 140, 142 (1) (534 SE2d 874) (2000).

DECIDED AUGUST 8, 2008.

*Michael S. Welsh*, for appellant.
*Hedrick & Edenfield, Bruce M. Edenfield, Stacey K. Hydrick*, for appellee.