**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2019**

# In the Court of Appeals of Georgia

A18A2079. STEPHENS et al. v. COAN.                    GS-076

GOSS, Judge.

While at home during business hours, James Stephens inadvertently placed a cell phone call to Michael Coan, his supervisor at the Georgia Subsequent Injury Trust Fund ("the Fund"). Coan answered the call, moved to another room to get better reception, and listened in for 13 minutes on a conversation Stephens was having with his wife Gina. After Coan confronted Stephens as to statements Stephens had made during the call, Stephens resigned from the Fund and, with his wife, brought this suit against Coan for eavesdropping, invasion of privacy, and negligence. The trial court granted the State's motion to dismiss the suit on the grounds that as a state officer or employee working within the scope of his employment at the time of the call, Coan was entitled to official immunity under the Georgia Tort Claims Act (GTCA), and

that the Stephenses had failed to comply with the ante litem requirements of the Act. On appeal from this judgment, the Stephenses argue that the trial court erred in its finding that Coan's eavesdropping occurred within the scope of his employment and in failing to consider Gina Stephens's claims as distinct from her husband's. We find no error and affirm.

Entitlement to official immunity under the GTCA "is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case[.]" *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671 (1) (570 SE2d 1) (2002) (citations omitted), cited with approval in *Considine v. Murphy*, 297 Ga. 164, 167 (1), n. 2 (773 SE2d 176) (2015); see also OCGA § 9-11-12 (b) (1) (authorizing a motion to dismiss for lack of subject matter jurisdiction).

> We review de novo a trial court's [ruling on] a motion to dismiss based on [official] immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is [any] evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity.

(Citations and footnotes omitted.) *Dept. of Human Resources v. Johnson*, 264 Ga. App. 730, 731 (592 SE2d 124) (2003); see also *Bonner v. Peterson*, 301 Ga. App. 443, 443 (687 SE2d 676) (2009) (reviewing a trial court's findings as to its subject-

2

matter jurisdiction concerning a state-employed physician's entitlement to official immunity "under the any evidence rule") (citation omitted).

So viewed, the record shows that in January 2016, Coan was the chief executive officer of the Fund, with job duties including hiring, firing, and management of its employees. Coan had hired Stephens two years earlier and was Stephens's supervisor. On January 19, 2016, Coan had attended a business meeting and returned home to finish his telework day. Starting at 2:43 p. m., Coan and Stephens engaged in a work-related telephone conversation that lasted until approximately 3:34 p. m.

Within two minutes of the end of the first call, Coan received a second call from Stephens, which Coan answered. Noting that the cell phone reception was poor, Coan told Stephens that he would go into his house for better reception. On achieving better reception and reporting so to Stephens, Coan realized that Stephens appeared to be talking to someone else, who Coan presumed was Stephens's wife Gina, about Coan and his job performance. During this second call, Coan did not hear Stephens and Gina discuss any other matters, and Coan did not hear Gina express anything but words of understanding such as "uh-huh" and "yes." After approximately 12 minutes, Stephens noted that his phone was connected to Coan's phone and terminated the call.

3

From what Coan heard Stephens say during this second call, it was clear to Coan that the two men "could no longer have an effective working relationship[.]" Between 3:49 p. m. and 5:32 p. m., Coan conducted calls with Fund board members and employees on the subject of what action to take concerning Stephens. On the following day, Coan confronted Stephens, who resigned.

On January 5, 2018, Stephens and Gina filed this action against Coan for illegal eavesdropping, invasion of privacy, and negligence. The State filed a motion to dismiss on Coan's behalf, arguing that Coan was acting within the scope of his official duties or employment at the time of the call at issue such that he was entitled to immunity under the GTCA and that Stephens had failed to comply with the Act's procedural prerequisites. The State attached to the motion affidavits, which were later supplemented, from Coan as well as the Board member to whom Coan had spoken on the day in question. Stephens moved to strike the portions of the State's pleadings referencing the contents of the phone call at issue.

The trial court denied the motion to strike and granted the motion to dismiss, concluding that because Coan was acting in his official capacity when he committed the acts giving rise to the Stephenses' action, the GTCA provided the exclusive remedy for the Stephenses; that Coan was entitled to official immunity thereunder;

4

and that plaintiffs had failed to comply with the ante litem requirements of the Act. This appeal followed.

1. The Stephenses assert that the trial court erred when it concluded that Coan was acting within the scope of his employment when he listened in on the Stephenses' conversation such that he was entitled to official immunity. We disagree.

As the Supreme Court of Georgia has noted, the original version of the GTCA defined the "State" as denoting "all state governmental entities, regardless of their nomenclature," including "the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions," but not including "counties, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities." (Citation and punctuation omitted.) *Kyle v. Ga. Lottery Corp.*, 290 Ga. 87, 90 (1) (718 SE2d 801) (2011). "By its express terms, the act clarifies that the 'State' includes state authorities and instrumentalities, but not local governmental entities, for purposes of waiving sovereign immunity." (Citation omitted.) Id.

The Stephenses do not dispute that the Fund is a state instrumentality to which the GTCA applies or that Coan was the administrator of that state instrumentality on the afternoon in question.

5

The exemption from tort liability provided by the GTCA applies to actions against state employees in their official and individual capacities[;] merely styling a suit against a public officer as one brought against him personally does not deprive him of any immunity to which he might otherwise be entitled for his official acts under the GTCA.

(Citation and punctuation omitted.) *Ferrell v. Young*, 323 Ga. App. 338, 343 (2) (746 SE2d 167) (2013).[1] We are therefore obligated to consider whether as a state officer or employee,[2] Coan is entitled to official immunity for answering and/or continuing to listen to Stephens's call.

The GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee. *A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor*." (Emphasis supplied.) OCGA § 50-21-25 (a). And OCGA § 50-21-21 (b) expresses "the public policy of this state" that "state officers and employees shall not be subject to lawsuit or liability arising from the performance or nonperformance of their official duties or functions." State officers and employees

---

[1] Our decision in *Ferrell* is physical precedent only as to its Division 1 only. Id. at 344.

[2] See OCGA § 50-21-22 (7) (defining state officers and employees).

6

are therefore "immune from tort suits seeking to impose individual liability on them for any tort committed by them within the scope of state employment, *including torts based on intentional wrongful conduct or actions taken with malice and intent to injure*." (Citations omitted; emphasis supplied.) *Gowen Oil Co. v. Streat*, 324 Ga. App. 370, 370 (750 SE2d 708) (2013), citing *Ridley v. Johns*, 274 Ga. 241 (552 SE2d 853) (2001). "This broad immunity from individual liability implements the legislative intent expressed in the GTCA that state officers and employees be free to act within the scope of their state employment without fear of lawsuits and loss of personal assets[.]" *Gowen Oil*, 324 Ga. App. at 370. "Where the state employee acts in the prosecution and within the scope of his official duties, intentional wrongful conduct comes within and remains within the scope of employment." (Footnote and punctuation omitted.) *Ford v. Caffrey*, 293 Ga. App. 269, 273 (2) (666 SE2d 623) (2008).

Thus in *Ridley,* supra, our Supreme Court held that a trial court had properly granted summary judgment as to an employee's action against a supervisor for 13 months of harassment, as follows:

> The statute is plain in its language as to the scope of its coverage and the extent of the immunity granted thereby: "This article constitutes the

7

exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." OCGA § 50-21-25 (a). The only qualifying factor listed in the statute is that the tort was committed while the officer or employee was acting within the scope of his or her official duties or employment. *Since there is no exemption in the statute for acts motivated by malice or an intent to injure, the presence of such motivation has no effect on the immunity granted by the statute*.

(Footnote omitted; emphasis supplied.) *Ridley*, 274 Ga. at 242. The Supreme Court reversed this Court, which had concluded that "malice or intent to injure could strip a state officer or employee of the immunity granted by the State Tort Claims Act for torts committed within the scope of his or her official duties or employment," and ordered the trial court's grant of summary judgment to the employer reinstated. Id.

Here, the Stephenses' claims are predicated on Coan's alleged violation of OCGA § 16-11-62, which provides as follows in relevant part:

It shall be unlawful for:

(1) Any person in a clandestine manner intentionally to overhear, transmit, or record or attempt to overhear, transmit, or record the private conversation of another which shall originate in any private place;

8

(2) Any person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view; [or]

. . .

(7) Any person to commit any other acts of a nature similar to those set out in paragraphs (1) through (6) of this Code section which invade the privacy of another.

A violation of OCGA § 16-11-62 is a "felony" punishable "by imprisonment for not less than one nor more than five years or a fine not to exceed $10,000.00, or both." OCGA § 16-11-69. See also *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 135 (1) (a) (709 SE2d 314) (2011) (noting that since the first recognition of a right to privacy in 1905, Georgia appellate courts "have identified four kinds of invasion of privacy for which a right of action exists, and among these is an intrusion upon the seclusion or solitude of a plaintiff or into his private affairs.") (citation omitted).

Even assuming for purposes of this appeal that Coan violated OCGA § 16-11-62 in that he "in a clandestine manner intentionally" overheard Stephens's conversation with his wife in their home, OCGA § 16-11-62 (1), or that this act of eavesdropping amounted to a tortious invasion of privacy, the evidence before the trial court showed that Coan did so in the course of answering a call from his

9

employee during business hours on a day when both men were known by all concerned to be teleworking. This evidence authorized the factual conclusion, which we cannot disturb on appeal, that Coan engaged in the behavior complained of while acting within the scope of his official duties. See *James v. Ga. Dept. of Pub. Safety*, 337 Ga. App. 864, 864-865 (789 SE2d 236) (2016) (affirming a trial court's factual findings as to the application of immunity because an appellate court properly considers whether a trial court had any evidence to support such findings, and because the trial court had such evidence before it); *Ford*, 293 Ga. App. at 273 (2) (defendant state director's libelous statements made in a memorandum concerning plaintiff employee's transfer were "made within the scope of [the defendant director's] official duties"). Further, the trial court's factual conclusion that Coan was acting within the scope of his official duties requires the legal conclusion that, even if Coan answered or continued to listen to Stephens's call with malicious or injurious intent, he was entitled to official immunity therefor. *Ridley*, 274 Ga. at 242, n.1 (supervisor was entitled to official immunity because the employee did not dispute that his harassment of employee took place within the scope of the supervisor's employment); *Ferrell*, 323 Ga. App. at 343-344 (2) (state police officer was immune from claims concerning his sexual assault on plaintiff in the wake of plaintiff's arrest

10

because the assault was committed while the officer was acting within the scope of his employment); see also *Bonner*, 301 Ga. App. at 451-452 (2) (b) (affirming trial court's finding that a state-employed resident physician was entitled to official immunity as to her treatment of a patient).

Finally, we fail to see any distinction, as the Stephenses ask us to, between the claims of James and Gina Stephens. The only relevant question, to which an answer is mandated by the GTCA, is whether Coan was acting within the scope of his official duties at the time of the call at issue. Because we must defer to the trial court's factual determination on this matter, and because the legal conclusion premised on that determination was correct as a matter of law, we affirm the trial court's grant of the State's motion to dismiss the Stephenses's suit on the ground that Coan was entitled to official immunity. Compare *Huff v. Spaw*, 794 F.3d 543 (6th Cir. 2015) (considering a claim for invasion of privacy under 18 U. S. C. § 2520 (a), which authorizes a private right of action for money damages, arising from an administrative assistant's listening in on a supervisor's conversations).

2. Although the Stephenses have waived the issue on appeal,[3] it is undisputed that they have not complied with the ante litem requirements of the GTCA. The Stephenses' failure to give the State proper notice of their claims is also fatal to their claims.

OCGA § 50-21-26 (a) provides:

No person, firm, or corporation having a tort claim against the state under this article shall bring any action against the state upon such claim without first giving notice of the claim as follows:

(1) Notice of a claim shall be given in writing within 12 months of the date the loss was discovered or should have been discovered[.]

And OCGA § 50-21-35 provides:

In all civil actions brought against the state under this article, to perfect service of process the plaintiff must both: (1) cause process to be served upon the chief executive officer of the state government entity involved at his or her usual office address; and (2) cause process to be served

---

[3] In their initial brief, the Stephenses admit that the trial court granted Coan's motion to dismiss on the ground that they had failed to comply with the GTCA, but they neither enumerate this holding as error nor point to any evidence that they complied with the Act's ante litem requirements. In fact, they admit on the first page of their brief that they have "stated no claim against the State and sought no damages from the State, including any related to the termination of [Stephens's] employment."

12

upon the director of the Risk Management Division of the Department of Administrative Services at his or her usual office address. . . .

It is undisputed that the Stephenses did not serve any notice of their claim with the proper state officials within 12 months of James Stephens's resignation and before filing their complaint against Coan individually. It is also undisputed that the Stephenses never served their complaint on any officer at the Fund or on the director of the Risk Management Division of the Department of Administrative Services. Because the Stephenses did not comply with these ante litem requirements of the GTCA, the trial court properly dismissed their complaint. See *Callaham v. Ga. Ports Authority*, 337 Ga. App. 120, 122-123 (786 SE2d 505) (2016) (affirming dismissal of plaintiff's action when plaintiff did not personally deliver or mail a copy of an ante litem notice to the Ports Authority; plaintiff's letter sent to the Authority's insurance adjuster was insufficient under OCGA § 50-21-26 (a) (2)); *Gibbons v. McBride*, 124 F.Supp.3d 1342, 1360-1361 (S. D. Ga. 2015) (plaintiff's failure to serve the director of the Risk Management Division rendered the action "void" such that the statute of limitation on that action was not tolled).

For all these reasons, the trial court did not err when it granted the State's motion to dismiss the Stephenses' complaint.

*Judgment affirmed. Miller, P. J., and Brown, J., concur.*